Jose M. QUIÑON and G. Richard Strafer, Appellants,

v.

FEDERAL BUREAU OF INVESTIGATION, Appellee.

No. 94–5261.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 23, 1995.

Decided June 28, 1996.

As Amended Aug. 20, 1996.

Ronald R. Massumi, with whom G. Richard Strafer was on the briefs, Washington, DC, argued the cause for appellants.

Marina U. Braswell, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on the brief, argued the cause for appellee. John D. Bates, Assistant United States Attorney, entered an appearance.

Sharon Kegerreis, Miami, FL, was on the brief for amicus curiae National Association of Criminal Defense Lawyers, Inc.

William C. Walsh, James K. Green, and Arthur B. Spitzer, Washington, DC, were on the brief for amicus curiae American Civil Liberties Union Foundation of Florida, Inc.

Elliot H. Scherker, Miami, FL, was on the brief for amici curiae Florida Association of Criminal Defense Lawyers and Florida Association of Criminal Defense Lawyers—Miami Chapter.

Before BUCKLEY, WILLIAMS, and SENTELLE, Circuit Judges.

BUCKLEY, Circuit Judge:

Appellant Jose Quiñon, along with two other criminal defense lawyers, were the subject of a brief obstruction of justice investigation by the Federal Bureau of Investigation ("FBI" or "Bureau"). Quiñon and his law partner, G. Richard Strafer, seek the production, under the Freedom of Information Act ("FOIA"), of documents acquired by the FBI during the course of that investigation. The FBI withheld many of the documents requested by Quiñon and Strafer pursuant to FOIA exemptions relating to records and information compiled for law enforcement purposes. The district court granted the FBI's motion for summary judgment on the basis of affidavits filed by FBI special agents. We reverse and remand so that the district court may conduct an *in camera* review of the withheld documents to verify that there was a legitimate law enforcement basis to the investigation and that the FBI's sources provided information with an expectation of confidentiality.

## I. BACKGROUND

This case springs from an FBI investigation into a possible obstruction of justice. Specifically, in August–September 1991, the FBI investigated three criminal defense lawyers, including appellant Jose Quiñon, to determine whether they had conspired to disqualify the entire Eleventh Circuit from hearing the appeal of the former head of the Medellin cocaine cartel, Carlos Lehder.

Lehder was convicted in 1988 of various drug trafficking charges in the District Court for the Middle District of Florida. After sentencing, Lehder's trial counsel, Quiñon and Edward Shohat, informed the trial judge that Lehder did not have immediate access to funds with which he could retain appellate counsel; they argued that because Lehder was "indigent, although … not truly indigent," he was entitled to court-appointed counsel. Transcript of Sentencing Proceedings, *United States v. Lehder–Rivas,* No. 81–82–Cr–J–12 (M.D. Fla. July 20, 1988), at 208. The trial judge was skeptical of this plea of quasi-indigence from a man who was purportedly a billionaire, *see* Mary Thornton, *Reputed Top Cocaine Trafficker Arrested in Colombia Faces U.S. Trial,* Washington Post, Feb. 5, 1987, at A18; and he instructed a magistrate judge to conduct a hearing on the matter. The magistrate confronted counsel with published, though unconfirmed, reports, *see* Dave Von Drehle, *Ohhhhh Miami!,* A.B.A. Journal, April 1, 1988, at 66, that Lehder had paid his lawyers millions of dollars. Quiñon and Shohat responded that reports of their fees had been exaggerated, and they have since filed affidavits to that effect. The magistrate then appointed counsel to represent Lehder on appeal.

Prompted by concerns about the quickly mounting costs of the Lehder appeal, in January 1989, the Circuit Executive for the Eleventh Circuit instructed Lehder's court-appointed counsel to "temporarily cease work" on the case. Joint Appendix ("J.A.") at 211. On March 17, 1989, the Eleventh Circuit designated Judge (now Chief Judge) Tjoflat, who was not on the panel hearing the Lehder appeal, to determine whether Shohat and Quiñon should be relieved of their responsibility to represent Lehder in his appeal. Judge Tjoflat presided over a meeting of all the interested parties in April 1989, in which Quiñon announced his willingness to re-enter the case. Quiñon was eventually joined by Strafer as co-counsel.

The following year, on March 6, 1990, now-Chief Judge Tjoflat wrote a letter to several other judges on the Eleventh Circuit questioning the propriety of having a court-appointed counsel represent a defendant on appeal if that defendant had been represented by privately retained counsel at trial. He noted that the problem "came to a head in the celebrated Carlos Lehder case," in which he suggested that the trial attorneys may have been overpaid, held the excess funds in trust, and re-entered the case only when it

became clear that they would be required to inform the court how much money they had received. J.A. at 237–38. In his letter, Chief Judge Tjoflat proposed that the circuit rules be amended to prohibit criminal defense attorneys from declining representation after trial. On April 1, 1991, the Eleventh Circuit promulgated Rule 46–1(d)(1) ("Rule 46"), which provides that retained counsel for a criminal defendant cannot abandon representation except by order of the court.

Rule 46 was not well received in the Florida legal community. *See* Mary Hiadky, *A bitter clash over criminal law fees,* Miami Review, Aug. 9, 1991, at 10A (hereinafter "Miami Review"). On July 22, 1991, the Chief Judge sent a letter to John W. Thornton, Jr., a representative of the Board of Governors of the Florida Bar, in which he explained the rationale underlying the rule. This letter did not refer to the Lehder case; instead, it discussed a hypothetical that involved a low-level drug courier whose lawyer was paid by a higher-up. A number of Florida criminal defense lawyers were unpersuaded by the Chief Judge's defense of Rule 46. For example, at the Florida Bar's July 1991 Board of Governors meeting, Stephen Bronis, a spokesman for the Florida Association of Criminal Defense Lawyers, harshly criticized the rule, reportedly terming it "judicial murder of the Sixth Amendment right to counsel." Miami Review, at 10A.

Appellants learned of Chief Judge Tjoflat's March 6, 1990, letter and, on August 6, 1991, they filed a motion to disqualify the Eleventh Circuit from hearing the Lehder appeal. They alleged that the letter had falsely accused Lehder's trial counsel of being overpaid and of holding the excess funds in trust for him and that Chief Judge Tjoflat had made similarly false statements in his correspondence with Thornton. Appellants asserted, finally, that the Eleventh Circuit had been tainted by Chief Judge Tjoflat's *ex parte* statements and, as a consequence, the entire Circuit should be disqualified from hearing the Lehder appeal.

Shortly thereafter, a complainant informed the FBI of an alleged violation of federal law; and on or about August 9, 1991, at the insti-gation of the lead prosecutor in the Lehder case, Assistant United States Attorney ("AUSA") Ernst Mueller, the FBI began investigating "possible obstruction of justice by [Quiñon] and two others for possibly acting in concert in an attempt to cause the entire Eleventh Circuit Court of Appeals to recuse themselves from the [Lehder] case." Declaration of FBI Special Agent James Felix dated Aug. 2, 1993, ¶ 36 ("Felix Declaration").

The investigation was short-lived. On September 11, 1991, barely a month after its inception, Mueller advised the Bureau that he no longer needed its assistance in the matter and filed his answer to the August 6 motion to disqualify the Eleventh Circuit. He contended that the motion was part of an effort by Quiñon and others, to discredit Rule 46. The motion to disqualify the Eleventh Circuit was denied, and Lehder's sentence was ultimately affirmed. *See United States v. Lehder–Rivas,* 955 F.2d 1510 (11th Cir. 1992).

On November 21, 1991, appellants Quiñon and Strafer filed a FOIA request for the documents compiled during the FBI's brief obstruction of justice investigation. The FBI located 77 pages, but ultimately released only sixteen, and those in redacted form. The documents were withheld pursuant to Exemptions 7(C) and (D) of FOIA, 5 U.S.C. § 552(b)(7)(C) & (D), "and/or" Exemption (j)(2) of the Privacy Act, 5 U.S.C. § 552a(j)(2). J.A. at 424. FOIA Exemptions 7(C) and (D) apply to

> records or information compiled for law enforcement purposes, but only to the extent that [their] production ·... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, [or] (D) could reasonably be expected to disclose the identity of a confidential source ... [and] information furnished by a confidential source. . . .

5 U.S.C. § 552(b)(7)(C), (D). Appellants filed suit in the district court to obtain the remaining pages. Both parties moved for summary judgment.

By Memorandum Opinion and Order dated August 4, 1994, the district court granted the FBI's motion for summary judgment and denied appellant's cross-motion. *Quiñon v. FBI*, Civ. No. 93–0763 (D.D.C. Aug. 4, 1994) ("Mem. op."). Based on the information contained in the affidavits of two FBI special agents, the court held that the Bureau had demonstrated that the records were compiled for legitimate law enforcement purposes and it dismissed, as "mere speculation," allegations that the investigation was retaliatory in design. *Id.* at 2–3. The district court further concluded that Exemptions 7(C) and (D) of FOIA provided a sound basis for the FBI to withhold the information at issue. The court held that Exemption 7(C) was properly invoked to withhold information identifying informants as well as other individuals involved in the investigation because the public interest in disclosure is minimal whereas the privacy interest of these individuals is great. *Id.* at 3–4. The court also held that the FBI had properly invoked Exemption 7(D) of FOIA to withhold information relating to the informants. *Id.* at 4–5. The district court reached these conclusions without conducting an *in camera* review of the withheld documents.

Appellants challenge each of the court's holdings substantially because, in their view, the affidavits are insufficiently detailed to support an award of summary judgment. Accordingly, they maintain that the court erred when it declined to review the withheld documents *in camera.*

## II. Discussion

Because the central issue raised by this appeal is whether the district court should have reviewed the withheld documents *in camera* to verify that they fell within the asserted FOIA exemptions, we begin by reviewing the circumstances that will warrant an *in camera* inspection of the information withheld by an agency in a FOIA case.

### A. *In Camera* Review

#### 1. *Criteria*

 FOIA directs trial courts to review *de novo* the applicability of the particular exemptions cited by the agency to the withheld documents. 5 U.S.C. § 552(a)(4)(B). In 1974, Congress amended FOIA in order to provide district courts with the explicit authority to conduct *in camera* review of agency files to determine the applicability of the claimed exemptions. *See id.* (courts "may examine the contents of such agency records in camera"). The Conference Report on the authorizing amendment states:

> While *in camera* examination need not be automatic, in many situations it will plainly be necessary and appropriate. Before the court orders *in camera* inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.

S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6287. In keeping with this directive, agencies customarily submit affidavits to establish the applicability of the asserted exemptions.

 In some cases, the affidavits provide a sufficient basis for granting summary judgment in favor of the Government without an *in camera* review of the withheld documents. As we stated in *Hayden v. National Security Agency/Central Security Service,* 608 F.2d 1381 (D.C.Cir.1979), however,

> the affidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.

*Id.* at 1387. The decision to conduct an *in camera* review is committed to the " 'broad discretion of the trial court judge.' " *Lam Lek Chong v. DEA,* 929 F.2d 729, 735 (D.C.Cir.1991) (quoting *Carter v. Department of Commerce,* 830 F.2d 388, 392 (D.C.Cir. 1987)). *See also NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978) ("[t]he *in camera*

review provision is discretionary by its terms").

The principal benefit of an *in camera* inspection is that it enables the trial court to make a case-specific determination; the costs include the possibly onerous burden imposed upon the trial court and the fact that a decision based on an *in camera* review may have little precedential value because it is unable to describe with specificity the basis for its decision. *See generally* Ronald M. Levin, Note, *In Camera Inspections Under the Freedom of Information Act*, 41 U.Chi. L.Rev. 557, 558–61 (1974). In addition, *in camera* review deprives the FOIA requester of an opportunity to present his interpretation of the withheld documents. *See id.* at 559; *but see Ray v. Turner*, 587 F.2d 1187, 1212 (D.C.Cir.1978) (Wright, C.J., concurring) (arguing that *ex parte in camera* inspections actually increase the adversariness of a FOIA proceeding). Accordingly, an *in camera* review should not be resorted to as a matter of course, simply on the theory that "it can't hurt." *See Ray*, 587 F.2d at 1195.

■ While we do not intend to cramp the trial court's broad discretion in this area, we have repeatedly noted that *in camera* review may be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency. *Lam Lek Chong*, 929 F.2d at 735; *Carter*, 830 F.2d at 392–93; *Meeropol v. Meese*, 790 F.2d 942, 958 (D.C.Cir.1986); *Lesar v. Department of Justice*, 636 F.2d 472, 481 (D.C.Cir.1980); *cf. Allen v. Central Intelligence Agency*, 636 F.2d 1287, 1298 (D.C.Cir.1980), *rev'd on other grounds, Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828 (D.C.Cir. 1983). Another crude, albeit important, factor to be considered is the number of the withheld documents. *See Carter*, 830 F.2d at 393 ("when the requested documents 'are few in number and of short length,' *in camera* review may save time and money") (quoting *Allen*, 636 F.2d at 1298). Finally, when the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents,

*in camera* review may be more appropriate. *See Carter*, 830 F.2d at 393.

In this case, the FBI withheld 61 of the 77 pages compiled in the course of the obstruction of justice investigation pursuant to FOIA Exemptions 7(C) and 7(D) and Privacy Act Exemption (j)(2). The FBI proffered affidavits from special agents that were intended to establish that the withheld documents fell within these exemptions. While the FBI stated its willingness to have the withheld documents reviewed *in camera*, the district court declined the invitation and awarded the Government summary judgment on the basis of the affidavits.

*2. Sufficiency of affidavits to show information was compiled for law enforcement purposes*

■ To withhold a document pursuant to Exemptions 7(C) and (D), an agency must make a threshold showing that it was "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). *See* Mem. op. at 2. A record is deemed to have been compiled for such a purpose if it was created or acquired in the course of an investigation "related to the enforcement of federal laws," and "the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least a colorable claim of its rationality." *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C.Cir.1982) (internal quotation marks omitted). "[L]ess exacting proof" of a legitimate law enforcement purpose will be required of law enforcement agencies such as the FBI. *Id.* at 418 & n. 25. Nevertheless, "the agency's basis for the claimed connection between the object of the investigation and the asserted law enforcement duty cannot be pretextual or wholly unbelievable." *Id.* at 421.

■ If the agency demonstrates that there was a legitimate basis for the investigation, the burden shifts to the party requesting the documents to produce evidence that the asserted law enforcement rationale was merely pretextual. *Doe v. FBI*, 936 F.2d 1346, 1354 (D.C.Cir.1991). "[T]he mere existence of a plausible criminal investigatory reason to investigate would not protect the files of an inquiry explicitly conducted, for example, for

purposes of harassment." *Shaw v. FBI,* 749 F.2d 58, 63 (D.C.Cir.1984) (Scalia, J.).

The district court concluded that (1) the affidavits submitted by the special agents proved that the investigation was rationally related to the FBI's law enforcement duties, and (2) appellants' allegations that the investigation was intended to retaliate against them were "based upon mere speculation." *See* Mem. op. at 2–3.

 We begin by inquiring whether the FBI affidavits are sufficiently detailed to allow the district court to determine that there was a rational basis for the investigation. We observe that the only specific fact cited in the affidavits to justify the investigation is the filing of the August 6 motion to disqualify the Eleventh Circuit. Appellants argue, and we agree, that the filing of a non-fraudulent pleading cannot, taken alone, form the basis for a legitimate obstruction of justice investigation. *See United States v. Hylton,* 710 F.2d 1106, 1111–12 (5th Cir.1983) (filing of a "factually accurate, non-fraudulent criminal complaint against federal agents" protected by the First Amendment's right to petition for redress of grievances). At oral argument, counsel for the FBI essentially conceded that the motion for dismissal could not provide the sole basis for an obstruction of justice investigation. Nonetheless, the Bureau draws our attention to the declaration of Special Agent Lipkey which provides, in relevant part:

> This investigation into possible obstruction of justice was not initiated by the "mere filing of a motion challenging the impartiality of a judge".... Rather, *certain events* occurred which prompted the complainant to contact the FBI. The FBI cannot further describe the basis for its law enforcement investigation, and the nexus between plaintiffs and a possible violation of federal law, without the danger of revealing the identity of a confidential source or confidential information received from a confidential source.

Declaration of FBI Special Agent Lloyd A. Lipkey dated Nov. 10, 1993 ("Lipkey Declaration"), ¶ 5 (emphasis added). The FBI argues that the motion to disqualify, together with the "certain events" referred to by Lip-

key, provided a rational basis for the investigation of Quiñon and others. Accordingly, it maintains, the Lipkey Declaration remedied the defect and obviated the need for an *in camera* review.

We disagree. The affidavits filed by the FBI fail to supply facts that would justify an *obstruction of justice* investigation; rather, they simply allude to "certain events," which they fail to describe or characterize, that allegedly supplied the basis for one. *Compare Davin v. Department of Justice,* 60 F.3d 1043, 1056–57 (3d Cir.1995) ("on the record before us, the government must allege additional *specific facts* that demonstrate the agency was gathering information with the good faith belief that the subject may violate or has violated federal law") (emphasis added; internal quotation marks omitted) *with Brinton v. Department of State,* 636 F.2d 600, 606 (D.C.Cir.1980) ("affidavits made a detailed showing of the applicability" of the asserted FOIA exemption, and there was thus no need for *in camera* review).

As noted above, where an agency's affidavits merely state in conclusory terms that documents are exempt from disclosure, an *in camera* review is necessary. *See, e.g., Carter,* 830 F.2d at 392–93. To allow the FBI to satisfy the *Pratt* requirement with a vague reference to other "events" would render that requirement a virtual nullity. Indeed, the FBI's cryptic allusion to "certain events" is especially problematic in this case. If AUSA Mueller's answer to the August 6 motion to disqualify the Eleventh Circuit is any indication, the other "events" may be nothing more sinister than criticisms of Rule 46. Taken together with the motion for dismissal, such "events" would provide a highly dubious basis for an obstruction of justice investigation.

The FBI asserts it could not be more specific without revealing a confidential source. *See* Lipkey Declaration ¶ 5 ("[t]he FBI cannot further describe the basis for its law enforcement investigation"). This concession underscores the need for an *in camera* review of the documents to evaluate the FBI's basis for the investigation. As we stated in *Simon v. Department of Justice,* 980 F.2d 782 (D.C.Cir.1992):

In [the] unusual circumstance, where the agency cannot describe the document fully enough to show that it is exempt from disclosure without in the course of doing so disclosing the very information that warrants exemption, the solution is for the court to review the document in camera.

*Id.* at 784.

Because the FBI affidavits are insufficiently detailed to demonstrate that there was a legitimate basis for the investigation, we need not inquire whether the affidavits also show that the claimed law enforcement rationale was not merely pretextual. We do note, however, that other discretionary factors also weigh in favor of *in camera* review. First of all, the FBI files contain only 77 pages of documents that relate to the investigation; therefore, *in camera* review will not impose an onerous burden upon the trial court. Moreover, the dispute over the applicability of the asserted FOIA exemptions centers on the contents of the withheld documents; an *in camera* review will presumably shed light on whether there truly was a legitimate purpose to the investigation. Finally, the FBI itself had proposed an *in camera* inspection to the district court; accordingly, there need be no concern "that such inspection will involve judicial intrusion into the activities of the Executive Branch." *Allen,* 636 F.2d at 1298–99.

## B. The District Court's Exemption 7(C) and (D) Holdings

Although we are remanding the case to allow the district court to review the withheld documents *in camera* to verify that they were "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), we comment briefly on the district court's rulings that the withheld documents fall within the ambit of Exemptions 7(C) and (D).

### 1. Exemption 7(C)

An agency may withhold documents compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Courts have construed this exemption to cover documents in which the privacy interest at stake outweighs the public's interest in disclosure. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 776, 109 S.Ct. 1468, 1483, 103 L.Ed.2d 774 (1989) ("*Reporters Committee*"); *Computer Professionals for Social Responsibility v. United States Secret Service,* 72 F.3d 897, 904–05 (D.C.Cir.1996) ("*Computer Professionals*"). In this case, because "the public interest in disclosure is minimal, while the privacy interests of the informants are strong," the district court concluded that the FBI was entitled to withhold documents identifying informants and other individuals involved in the investigation. Mem. op. at 4.

Appellants argue on appeal that any documents identifying Chief Judge Tjoflat's role in the investigation should not be protected under Exemption 7(C) because his privacy interest is outweighed by the public's interest in disclosure. Appellants base their claim that the Chief Judge's privacy interest is negligible on the fact that (1) if the alleged obstruction of justice were ever prosecuted, he would be a "necessary witness"; and (2) he is a public figure. Brief for Appellants at 38–39. Even assuming, arguendo, that a FOIA plaintiff may infer that a specific person is a source and then make special arguments against confidentiality based on that hypothesis, we dismiss appellants' first argument because it is sheer speculation that the Chief Judge would be a "necessary witness." As regards their second argument, while it is true that Government officials may have a somewhat diminished privacy interest, *see Fund for Constitutional Gov't v. National Archives and Records Serv.,* 656 F.2d 856, 865 (D.C.Cir. 1981), "[they] do not surrender all rights to personal privacy when they accept a public appointment." *Bast v. Department of Justice,* 665 F.2d 1251, 1255 (D.C.Cir.1981). *Cf. Fitzgibbon v. Central Intelligence Agency,* 911 F.2d 755, 767 (D.C.Cir.1990) ("[p]ersons involved in FBI investigations—even if they are not the subject of the investigation—'have a substantial interest in seeing that their participation remains secret'") (quoting *King,* 830 F.2d at 233).

Appellants also argue that if the Chief Judge was involved in wrongdoing, the public has a substantial interest in the disclosure of

documents that would shed light on his role in the investigation. We note, however, that the relevant question in determining whether there is a public interest in disclosure is whether the FBI, not Chief Judge Tjoflat, has engaged in wrongdoing. As the Supreme Court stated in *Reporters Committee*, the public interest to be taken into the balance is that in "[o]fficial information that sheds light on an agency's performance of its statutory duties." 489 U.S. at 773, 109 S.Ct. at 1482. Disclosure of information that "reveals little or nothing about an agency's own conduct" does not further the public interest envisaged by FOIA. *Id.* We have recently observed, however, that

> [a]lthough *Reporters Committee* and the precedent of this circuit make clear that FOIA extends only to those records which reveal something about *agency action*, the mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption. Such records may still be cloaked with the public interest if the information would shed light on agency action.

*Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 894–95 (D.C.Cir.1995) (emphasis in original).

■ As an initial matter, we note that appellants have not produced a single speck of evidence that the Chief Judge was involved in wrongdoing; and even if they had, there is no indication that such misconduct would shed any light on the FBI's action. When

> governmental misconduct is alleged as the justification for disclosure, the public interest is insubstantial unless the requester puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity and shows that the information sought is necessary in order to confirm or refute that evidence.

*Computer Professionals*, 72 F.3d at 905 (quoting *Davis v. Department of Justice*, 968 F.2d 1276, 1282 (D.C.Cir.1992)). In the absence of such evidence, we agree with the district court that the FBI may invoke Exemption 7(C) to withhold the names of individuals identified in the withheld documents, provided, of course, that those documents were compiled for a law enforcement purpose.

### 2. Exemption 7(D)

An agency may withhold documents compiled for a law enforcement purpose that were "furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). In this case, the district court concluded, on the basis of a declaration filed by Special Agent Felix, that "all the individuals interviewed knew the subjects of the investigation." Mem. op. at 4. Because "[i]t is reasonable to conclude that the persons interviewed would not have been inclined to risk the embarrassment or social antagonism that could have resulted from public disclosure of their statements," the court found that the FBI had "demonstrated the existence of an implied assurance of confidentiality" and thus had "satisfied the requirements of Exemption 7(D)." *Id.* at 4–5.

In *United States Department of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993), the Supreme Court held that "the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." *Id.* at 181, 113 S.Ct. at 2024. The Court rejected such a broad presumption of confidentiality in favor of a "particularized approach" that looks to "factors such as the nature of the crime that was investigated and the source's relation to it" in order to determine whether a promise of confidentiality may be inferred. Id. at 180, 113 S.Ct. at 2023–24.

■ The only case-specific factor apparently relied upon by the district court to justify an inference of confidentiality was Special Agent Felix's statement that many of the persons interviewed "were acquainted and/or had contact on a business, professional, and/or social level with one or more of the subjects of th[e] investigation." Felix Declaration ¶ 42. The mere fact that a source may have some social or business association with the subject of a federal criminal investigation falls short of the particularity mandated by *Landano*.

Whether the informants in this case may be presumed to have disclosed information to the FBI under an expectation of confidentiality must surely depend on both the nature of the disclosure and the nature of their relationships with the subjects of the investigation. It is simply not reasonable to assume, for example, that anyone who provides the FBI with exculpatory information about a professional associate will be "embarrassed" to have that fact disclosed. Therefore, on remand, the FBI must satisfy the district court that their informants cooperated with an expectation of confidentiality. To this end, the FBI may submit additional affidavits to establish that the informants' particular social or professional relationships with the subjects of the investigation, and the nature of the information provided by them, allow for the inference of an assurance of confidentiality.

In its appellate brief, the FBI also contends that because the investigation in the instant case was related to the "notoriously violent" crime of drug trafficking, one can infer that all information was given under an implied promise of confidentiality. Brief for Appellee at 25. We are unpersuaded by this argument. In this case, the Bureau was investigating an alleged attempt to disqualify the Eleventh Circuit from hearing a criminal appeal. Ordinarily, there is little to fear, at least of a violent nature, from a trio of criminal defense lawyers. At oral argument, however, counsel for the FBI assured us that Carlos Lehder's tentacles spread far and wide, and that people would have legitimate fears about crossing even his lawyers. Again, the FBI is free, on remand, to submit affidavits that bolster this contention.

Whether or not the Bureau decides to submit additional affidavits in support of its invocation of Exemption 7(D), the district court must, on remand, examine the documents *in camera* not only to determine whether the FBI was engaged in a bona fide law enforcement investigation, but also whether they support the entitlement of each informant to confidentiality under the statute. If the court decides that the exemptions were properly invoked, it should also determine whether, contrary to its claim, the Bureau has withheld any reasonably segregable non-exempt portions of the documents.

### III. CONCLUSION

For the foregoing reasons, the summary judgment granted the FBI is vacated; and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*