**WESTERN CENTER FOR
JOURNALISM,**
Plaintiff,

v.

**INTERNAL REVENUE SERVICE,**
Defendant.

**No. CIV.A. 99–906 (CKK).**

United States District Court,
District of Columbia.

March 31, 2000.

Larry Lkayman, Paul J. Orfanedes, Judicial Watche, Inc., Washington, DC.

David A. Hubbert, J. Brian Ferrel, Michael J. Salem, Tax Division, U.S. Dept. of Justice, Washington, DC.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

In this case, Plaintiff challenges the adequacy and reasonableness of a series of searches that Defendant conducted pursuant to Plaintiff's request for documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Pending before the Court are Defendant's two motions for summary judgment, Defendant's motion to strike certain of Plaintiff's declarations, and Plaintiff's motion for leave to supplement its opposition to Defendant's first motion for summary judgment. In addition, each of these motions has precipitated oppositions and reply briefs. Because the Court finds that Defendant conducted a series of adequate searches that were reasonably calculated to uncover the requested documents, it shall grant Defendant's first motion for partial summary judgment, and its second motion for summary judgment. Moreover, the Court shall deny Defendant's motion to strike as moot, and shall grant Plaintiff's motion for leave to supplement, noting Defendant's objections thereto.

## II. BACKGROUND

### A. Administrative Proceedings

In July of 1997, Plaintiff Western Center for Journalism, a non-profit, tax exempt corporation, submitted a FOIA request to the Internal Revenue Service ("the Service") Disclosure Office in the Northern California District seeking access to 1994 and 1995 tax audit and examination documents. After conducting an audit of Plaintiff's tax-exempt status in 1996, the Service compiled and stored the materials both in the Los Angeles Service Center and in a large storage file in San Francisco. See Compl., Ex. 1. Shortly before the audit, Plaintiff had sponsored and published an investigation into the death of Deputy White House Counsel Vince Foster. See Pl.'s Opp. to Summ. J. at 1. Based on this investigation, Plaintiff asserted that the tax audit was politically inspired and was intentionally held to "severely curtail the Center's ability to exercise its First Amendment rights and [to] damage the organization." Id.

Within 10 days of receiving the request, the Service's Disclosure Specialist in the Los Angeles District Office, Ms. Hale, responded by conducting a search of the Integrated Data Retrieval System (IDRS), which is a mainframe database of all taxpayers' tax accounts maintained by the Service. See Hale Decl. ¶ 5. After finding Plaintiff's tax files in the IDRS, she placed an order with the Los Angeles Service Center, the repository for all of the closed tax accounts. Upon review of the files she received from the Service Center, Ms. Hale noted that two of the 114 pages found contained material to which FOIA exemption 5 U.S.C. § 552(b)(5) potentially applied. Id. ¶ 6 She proceeded by redacting the information on the two pages that contained the exempted material, and released the segregable portions of the two pages along with the remaining 112 pages in full.

On October 29, 1997, Plaintiff filed an administrative appeal with the Service and requested complete disclosure of the administrative files. See Compl. ¶ 7. The Service responded by letter acknowledging

the request, *see* Gulas Decl. ¶ 4, and released in full the two pages of documents that had been partially withheld. *Id.* ¶ 5.

## B. Judicial Proceedings

Despite the release of 114 documents in full following the administrative appeal, Plaintiff filed a complaint with this Court for declaratory and injunctive relief pursuant to 5 U.S.C. § 552(a)(3), claiming that the Service had failed to turn over all the documents encompassed by the initial request. The Service's Disclosure Litigation Division Attorney, Ms. Gulas, responded by initiating an official investigation into the allegations of the complaint. Ms. Gulas immediately noticed that, although the documents pertaining to the audit had been drafted by Revenue Agent Jonathan Grisso, the Plaintiff's FOIA request referred to Revenue Agent Tom Cederquist as the agent who had worked at the Sacramento Division Office on the audit. *See* Gulas Decl. ¶¶ 3, 6. For clarification, she contacted Mr. Grisso, who informed her that Mr. Cederquist had been assigned originally to the examination of the Plaintiff, but was removed due to an apparent conflict of interest. *See id; see also* Grisso Decl. ¶ 3. Mr. Grisso declared that he had personally traveled to Sacramento to acquire the files in question, *see* Grisso Decl. ¶ 3, and had incorporated all of Mr. Cederquist's material into his files. *See* Mot. Summ. J. ¶ 28. After concluding the examination, he forwarded all of his files and Mr. Cederquist's files to his manager to be closed. *See* Grisso Decl. ¶ 3.

### 1. Defendant's First Motion for Summary Judgment

As a result of the investigation into the allegations of Plaintiff's complaint, the Service filed a motion for summary judgment

on the grounds that there were no genuine issues as to any material facts bearing on the case. In its first such motion, the Service argues that, because it conducted a search reasonably calculated to uncover and locate, identify, and release all records responsive to Plaintiff's FOIA request, it is entitled to a judgment as a matter of law. *See* Mot. Summ. J. at 7–8. At this time, the Service was not aware that the Hale and Grisso declarations actually referenced two different sets of audit and examination materials. Ms. Gulas assumed that both Hale and Grisso were referring to the same set of files. *See* 2d Gulas Decl. ¶ 10. In fact, the materials that Hale ordered and received from the Service Center comprised a pared-down version of a larger set of examination materials. *See* 2d Gulas Decl. ¶ 9. The Grisso files (the larger set of files) had been forwarded to and stored in a large case file storage area in San Francisco, where they were being used by the Department of Justice in a *Bivens* lawsuit which Plaintiff had initiated. *See* Pl.'s. Opp. to Mot. Summ. J. at 3. The Service would not realize this until after Plaintiff opposed its motion.

Plaintiff opposed summary judgment, alleging that the Service had failed to turn over a variety of documents including internal audit procedures, Congressional letters, inspection records, and other in-house memos that were being used in the *Bivens* case. *See* Pl.'s Opp. to Mot. Summ. J. at 9–10. In response, the Service indicated that the declarations on which the Plaintiff based its opposition were not authenticated and were based on hearsay. *See* Def.'s Reply ¶ 3. Pursuant to the federal rules, the Service moved to strike from the record of this proceeding the declarations attached to Plaintiff's opposition. *See* Fed. R.Civ.P. 56(e) and Fed.R.Evid. 802.[1] Fur-

---

1. Plaintiff contends that it has obtained an authenticated Fourth Declaration of Joseph Farah, and that, because all of the paragraphs with the exception of paragraph 19 of the Third Declaration of Joseph Farah appeared in declarations used in the *Bivens* action, the Service's reliability argument is not valid. Paragraph 19 consists of alleged statements

by Plaintiff's accountant and others familiar with the Service's procedures indicating that all administrative files include a "log" reflecting where the file has been, who has reviewed it, and numerous other documents and forms reflected in the Plaintiff's FOIA request. In addition, Plaintiff regards paragraph 19 of the Third Declaration as moot since it discovered

ther, the service maintained, because Plaintiff never requested access to the Service's inspection records, its internal audit procedures, or the Congressional correspondence, the Service was not obligated to search for and to turn over these documents. *Id.* ¶ 6.

Notwithstanding the professed adequacy and reasonableness of its initial search, the Service conducted another search for records and located them within the possession and control of the Department of Justice. *Id.* ¶ 7. Converting its original motion for summary judgment into one for partial summary judgment, the Service informed Plaintiff that, upon review and consideration, it would release the newly discovered documents, consisting of 658 pages. *Id.*

Plaintiff continues to maintain, however, that partial summary judgment is not possible when the reasonableness of the Service's search for responsive documents is at issue. Because documents such as those found in the TIGTA report were not turned over to the Plaintiff, Plaintiff contends that the Service has not acted in good faith, and that its first search was not legally sufficient. For these reasons, Plaintiff requests additional discovery into the reasons why all responsive documents were not produced after the initial search, the existence and location of other responsive documents, and other related items. *See* Pl.'s Reply to Def.'s Opp. to Mot. for Leave to File Supp. Opp. at 2–6.

### 2. Defendant's Second Motion for Summary Judgment

With its Second Motion for Summary Judgment, the Service seeks to cure the defects in the earlier motion, and to dem-

onstrate its earnest efforts to comply with Plaintiff's request. First, the Service asks that its initial motion be converted to a partial motion for summary judgment. In addition to its earlier release of 114 pages, the Service claims that, because it conducted an additional search identifying 658 pages of documents—655 of which it released in full, while redacting 3 pages pursuant to FOIA Exemptions 3 and 7(c)—it is entitled to judgment as a matter of law on all of Plaintiffs' claims. *See* 2d Mot. Summ. J. at 18–19. Explaining why it had not located the additional documents in the initial search, the Service concedes that Plaintiffs filed their *Bivens* case in 1998, one year after their FOIA request, and that therefore the original examination files had not been transferred to the Department of Justice at the time of the FOIA request. *See* 2d Gulas Decl. ¶ 5. Upon the Service's acknowledgment that these files might have been identifiable, it began another investigation to determine why the original examination file had not been available for the Los Angeles Disclosure Office to respond to the FOIA request. *See id.* Ms. Gulas determined that because the Grisso (original examination) files were so large, they were stored in the large case file storage area in San Francisco. *Id.* at ¶ 9. The Los Angeles Disclosure Office received a different set of files, the 1994 and 1995 materials filed with the Service after the examination had begun. *Id.*

According to the Service, it properly withheld one page, in part, under FOIA Exemption 3 because the page contains the "return information" of third party taxpayers. The Service also argues that it

---

new evidence, the Treasury Inspector General for Tax Administration (TIGTA) Report, which refers to the existence of the "Examination Return Charge Out" Form 5546, the missing "log" file. As a result, Plaintiff moves to supplement its opposition by including the Fourth Declaration of Joseph Farah and the TIGTA Report in its motion. The Service contests only the latter. The TIGTA Report allegedly suggests that the tax audit was initiated and politically-inspired by the White

House since it contains documents, including a faxed letter from the White House to the Service, requesting a tax investigation of the Plaintiff. According to the Plaintiff, this request ensued after a private citizen in California faxed to the White House an ad that appeared in a newspaper about Plaintiff's investigation of Vince Foster. Noting that this information was not a part of the materials turned over to Plaintiff, Plaintiff again contests the entry of summary judgment.

properly withheld two other pages, in part, under FOIA Exemption 7(c) to protect the privacy of the complainant, *see* Frosch Decl. ¶ 7, and to protect the privacy of certain incidental medical information. *Id.* ¶ 8. In support of its Exemption 7(c) argument, the Service notes that it is a law enforcement entity and, accordingly, that documents compiled in tax investigations or proceedings are within the meaning of "records" or information compiled for law enforcement purposes.

Plaintiff, however, continues to oppose summary judgment. First, Plaintiff contends that the additional files found did not explain how certain documents like the White House fax found its way from the White House to the Service. *See* Pl.'s Opp. to 2d Mot. Summ. J. at 2. Second, it maintains that the Service's claim in its first motion for summary judgment has been discredited. *See id.* Third, Plaintiff is confident that the audit was politically-inspired. Finally, Plaintiff continues to allege that the Service has failed to provide all documents concerning the audit. For these reasons, the Plaintiff requests that the Court award discovery into the scope and conduct of the Service's search, the existence of documents generated during the audit, the whereabouts of additional documents, and the reasons why they were not produced in October 1997. *See id.* at 3. Plaintiff also challenges the claimed exemptions, maintaining that the Service is acting in bad faith, and asks for *in camera* review of documents.

The Service responds that Plaintiff violated Rule 108(h), now Local Civil Rule 7.1(h), because it failed to address the facts that the Service raised in its motion, instead enumerating immaterial purported facts, and making no effort to advise the Court as to which of the material facts were disputed. *See* Def.'s Reply to Pl.'s Opp. to 2d Mot. Summ. J. at 2–4. Also, the Service contends, Plaintiff bases its opposition on "mere speculation," which is not sufficient to conclude that a search has not been properly conducted, and falsely alleges that Ms. Gulas's declaration is de-fective because it includes second-hand information about the searches. *Id.* at 5–6.

## III. DISCUSSION

In reviewing a motion for summary judgment under the FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, entry of summary judgment is mandated against a party if, after adequate time for discovery and upon motion, the party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

 In FOIA cases, summary judgment may be granted solely on the basis of agency affidavits provided that they are clear, specific and reasonably detailed, and there is no contradictory evidence on the record or evidence of agency bad faith. *See Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C.Cir.1979). Where the adequacy of a FOIA search is at issue, for an agency to prevail on summary judgment, it "must establish beyond a material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C.Cir.1995). Courts have interpreted this responsibility to mean that agencies must make "a good faith effort to conduct a search for the requested records, using methods which

can be reasonably expected to produce the information requested." *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C.Cir.1990) (citing *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984)). While a search is not rendered unreasonable if it fails actually to "uncover[ ] every document extant," *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C.Cir.1991), it will be deemed inadequate if the "affidavit does not show, with reasonable detail, that the search method … was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68.

■ Courts may assess the reasonableness of the search by examining the agency affidavit's description of the scope and methods used in the search. To survive challenge, the agency must provide "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. Further, the affidavit should additionally "describe at least generally the structure of the agency's file system which makes further search difficult." *Church of Scientology v. I.R.S.*, 792 F.2d 146, 151 (D.C.Cir.1986).

## A. The Service Conducted an Adequate Search

### 1. Plaintiff is not entitled to discovery.

■ Plaintiff asserts that it is entitled to discovery into the adequacy of the Service's search, the existence of documents generated during the course of the audit, the whereabouts of those documents, and the reasons why all responsive documents were not produced to Plaintiff in October 1997, among other related matters. *See* Pl.'s Opp. to Def.'s 2d Mot. Summ. J. at 10–16. In Plaintiff's view, the Service's initial failure to turn over the additional responsive documents used in the *Bivens* case warrants discovery, as do the politically-charged circumstances surrounding the audit; the Service's failure to provide

documents concerning the audit in a timely manner; and the inadequacy of the IRS's proof in support of its first motion for summary judgment. *See id.*

■ Under the FOIA, courts may order discovery where "the affidavits of government agents create genuine issues as to the thoroughness of the government search for documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1352 (D.C.Cir.1983). Affidavits must be "reasonably detailed, setting forth the terms and the type of search performed, and averring that all files likely contain responsive materials (if such records exist) were searched." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C.Cir.1973).

■ Ms. Hale's declaration sets forth in detail how the initial search was conducted. *See* Hale Decl. ¶¶ 5–6. Ms. Hale explained that she first employed the IDRS, which houses all taxpayers' tax accounts, and then ordered the closed examination files from the Los Angeles Service Center, which stores all of the closed tax accounts. *See id.* Ms. Gulas' declaration further describes the difficulty in providing all of the responsive materials, since two separate filing systems in two different cities contained Plaintiff's examination materials. *See* 2d Gulas Decl. ¶¶ 9–10. The Service bears no obligation to conduct an exhaustive search, merely to carry out a reasonable one. *See Shaw v. Dep't of State*, 559 F.Supp. 1053, 1057 (D.D.C.1983). Therefore, the Service met its burden of "demonstrating that there is no genuine issue respecting its assertion that all responsive documents in its possession have been both unearthed and unmasked." *Weisberg*, 705 F.2d at 1352.

■ Plaintiff, however, contends that the Service failed to include first-hand declarations or affidavits from any of its agents in San Francisco to support the Service's claim that the large examination file was housed in San Francisco. *See* Pl.'s Opp. to Def.'s 2d Mot. Summ. J. at 9–10. Although the Gulas declaration contains

information obtained from third party declarants, as long as the search declaration is based upon actual knowledge, rather than speculation, the second-hand nature of the testimony will not disqualify the declaration. *See SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C.Cir.1991); *Meeropol*, 790 F.2d at 951. Ms. Gulas spoke with all agents involved in Plaintiff's tax examination and with the FOIA search. Mr. Grisso and Ms. Hale's declarations corroborate Ms. Gulas's declaration supporting the Service's claim that there were two different sets of examination files, and that large case files are always housed in San Francisco.

## 2. The Service fully discharged its duty to conduct a reasonable search.

 To evaluate the Service's claim that it fully discharged its disclosure requirements under the FOIA, the Court must address not whether there might exist additional documents possibly responsive to a request, but rather whether the search for those documents was adequate. *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994). Where the adequacy of a FOIA search is at issue, this Circuit has ruled that the agency "must establish beyond a material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C.Cir.1995). There is no requirement that an agency search every record system. *See Meeropol*, 790 F.2d at 952–53 (holding that a search is not presumed unreasonable simply because it fails to produce all relevant material). When Ms. Hale received the initial FOIA request, she conducted a search in a database that contained all taxpayers' closed accounts, including Plaintiff's closed tax account. *See* Hale Decl. ¶ 5. Then, when Plaintiff filed a complaint with this Court, Ms. Gulas went beyond Plaintiff's FOIA request and initiated an official investigation into the allegations of the complaint. *See* Gulas Decl. ¶ 3. She discovered that two different revenue agents were involved

in Plaintiff's audit, and wanted to ensure that Revenue Agent Cederquist's case files were incorporated into Revenue Agent Grisso's case files. *See* Gulas Decl. ¶¶ 3, 6. When Plaintiff discovered that additional responsive materials existed, the Service investigated, compiled, and released the portions of these documents not exempt under the statute. *See* Def.'s 2d Mot. Summ. J. at 13–14.

For these reasons, the Service established that each document requested was either produced, unidentifiable, or wholly exempted. *See National Cable Television Ass'n v. Federal Communications Comm'n*, 479 F.2d 183, 186 (D.C.Cir.1973). The Service turned over all documents that were responsive to Plaintiff's request. When it came to the Service's attention that additional responsive documents existed, the Service explained why these had been unidentifiable, due to the two different case files stored in two different cities. In addition, the Service explained that it had released the segregable portions to the Plaintiff. Thus, the Service demonstrated that its search for documents was reasonable.

## B. The Service Acted in Good Faith

 Once reasonableness is established, an agency must show that it made a good faith effort to conduct a FOIA search for requested records by using methods that can reasonably be expected to produce the information requested. *See Oglesby*, 920 F.2d at 68. Here, the Service responded promptly to the initial FOIA request, *see* 5 U.S.C. § 552(a)(6)(A)(i) (1994)(amended 1996); Hale Decl. ¶ 5. Ms. Hale explains that she employed the database that contained all of the taxpayers' closed accounts to locate information for the Plaintiff, *see* Hale Decl. ¶ 5, and, after careful review on administrative appeal, released the segregable portions of the original 114 documents located, *see id.* ¶ 6. Ms. Gulas then discovered that the original revenue agent's case files were incorporated into the case files of the revenue agent

who completed the examination, *see* Grisso Decl. ¶ 3; Def.'s Mot. Summ. J. ¶ 28. Finally, upon reading Plaintiff's opposition indicating that more examination documents existed, the Service immediately searched for and found the additional responsive documents that were stored in the large case files and used in the *Bivens* case. *See* Def.'s Reply to Pl.'s. Opp. ¶ 7.

Plaintiff, however, disagrees. First, Plaintiff argues that the Service's initial failure to turn over the additional responsive documents used in the *Bivens* case demonstrates bad faith and thus creates grounds for discovery. Nonetheless, this Circuit has held that, under the FOIA, it is unreasonable to expect even the most exhaustive search to uncover every responsive file; what is expected of a law-abiding agency is that the agency admit and correct error when error is revealed. *See Meeropol*, 790 F.2d at 943 n. 5. Here, the Service admitted and corrected the error by turning over the additional documents when Plaintiff revealed it to the Service.

■ Second, the Plaintiff contends that the audit was politically inspired and, therefore, that the agency acted in bad faith by initiating the audit. *See* Pl.'s Opp. to Def.'s 2d Mot. Summ. J. at 3. Plaintiff predicates this assertion on Revenue Agent Cederquist's alleged comments that the audit was political. *See id; see also* Roux Decl. ¶¶ 9–11. The possibility that the Service conducted a politically motivated audit, however, is not the issue before the Court. This FOIA case is concerned solely with whether the agency conducted an adequate search, and whether the agency acted in good faith in so doing. *See Steinberg*, 23 F.3d at 551. Moreover, the disputed comment that Revenue Agent Cederquist allegedly made is not material to this case. This alleged comment goes to the motivation behind the audit, and not to the adequacy of the search.

■ Third, Plaintiff presumes that the Service may be withholding more documents pertaining to the examination of its case since Plaintiff alleges that the Service intentionally withheld the materials in the large storage file. This Circuit addressed a similar issue in *Nation Magazine v. Customs Service*, 71 F.3d 885, 892 n.7 (D.C.Cir.1995), where it held that the "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search" for the requester. *Id.* Furthermore, "if the agency is no longer in possession of the document, for a reason that is not itself suspect, then the agency is not improperly withholding that document and the court will not order the agency to take further action in order to produce it." *SafeCard*, 926 F.2d at 1201. An agency must exercise reasonable diligence to uncover relevant documents. *See id.* Indeed, even when a requested document once existed, summary judgment will not be defeated by an unsuccessful search for the document, so long as the search was diligent. *See Nation Magazine*, 71 F.3d at 892 n.7.

■ In this case, undisputed evidence supports a finding that the Service conducted a diligent search. Although not obligated to do so, the Service looked beyond the four corners of the request to ensure that all of the materials requested had been turned over to the requestor. *Cf. Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C.Cir.1996) (holding that an agency is not required to look beyond the four corners of a FOIA request to ensure that all of the materials requested had been turned over to the requestor). For example, in addition to the search that Ms. Hale conducted. Ms. Gulas initiated an investigation into the complaint when she realized that a different revenue agent began the search from the revenue agent who completed the search. *See* Hale Decl. ¶¶ 5–6; Gulas Decl. ¶¶ 3, 6. She contacted both agents to ensure that the case file requested contained both agents' work papers and case files. After receiving an affirmative response, Ms. Gulas submitted an affidavit indicating that the case file was complete. Because agency affidavits generally enjoy a presumption of good faith, a mere allegation of agency bad faith, without more tangible evidence sup-

porting that allegation, will not suffice to undermine the sufficiency of agency submissions. *See Carter v. Dep't of Commerce*, 830 F.2d 388, 393 (D.C.Cir.1987); *see also SafeCard*, 926 F.2d at 1200–01.

Fourth, Plaintiff argues that, since the Service possessed these documents at the time of the FOIA request, the Service was improperly withholding them. Though perhaps evidence of inauspicious confusion on the Service's part, the Service has offered plausible explanations of its early failure to uncover these documents. In any event, since the documents in question have been released to the Plaintiffs, the existence of these documents now presents a moot issue.

Plaintiff's rationale for agency bad faith lacks validity. Plaintiff has not presented evidence that additional documents exist which might be released. *See Ground Saucer Watch Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981) (holding that the Plaintiff bears the burden of presenting evidence that additional, releasable documents existed in order to establish agency bad faith). Moreover, mere speculative assertions that more documents exist will not cast doubt on the agency's affidavits and assertions. *See SafeCard*, 926 F.2d at 1201. Therefore, on these facts, the Court finds that the Service's searches were adequate, and were conducted in good faith.

### C. The Service Properly Redacted Information under Exemptions 3 and 7(C).

#### 1. The Service Properly Invoked Exemption 3.

 The Service's affidavits demonstrate that it properly withheld documents that fall within well-established FOIA Exemption 3, which protects from disclosure information that is

[s]pecifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to

leave no discretion on the issue, or (B) established particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). Here, the Service employed, in conjunction with Exemption 3, a qualifying non-disclosure statute under 26 U.S.C. § 6103(a), which mandates that tax return information be held confidential subject to a number of strictly construed exemptions. *See Church of Scientology*, 484 U.S. at 10, 108 S.Ct. 271 (1987); *Lehrfeld v. Richardson*, 132 F.3d 1463, 1465 (D.C.Cir.1998); *Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 611 (D.C.Cir.1997). Return information includes:

a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, or is being examined, or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition or offense.

26 U.S.C. § 6103(b)(2)(A).

 Because Section 6103's prohibitions apply here, the Service may not release to the public a third party's tax return information. *See* 26 U.S.C. § 6103(a). According to the Frosch declaration, for example, the information redacted from page 010 includes the names, tax identification numbers, tax years under investigation, and other tax data of taxpayers other than the plaintiff. *See* Frosch Decl. ¶ 6. Thus, the Service properly invoked Exemption 3 in conjunction with 26 U.S.C. § 6103(b)(2)(A) to protect the identity of third party taxpayers. *Id.*[2]

---

**2.** Plaintiff's argument asserting that the Service acted in bad faith in this instance fails

## 2. The Service Properly Invoked Exemption 7(C).

■ Exemption 7(C) permits an agency to withhold information "compiled for law enforcement purposes" to the extent that such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Service serves in a law enforcement capacity as defined by Congressional statute, see 26 U.S.C. § 7601. The Supreme Court has held that the authority bestowed upon the Service to enforce the internal revenue laws and related statutes constitutes an extraordinarily broad mandate to conduct inquiries into all persons who may be liable to pay any internal revenue tax. See United States v. LaSalle Nat'l Bank, 437 U.S. 298, 308, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); Donaldson v. United States, 400 U.S. 517, 523, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) (imposing upon the Secretary of the Treasury the duty to "canvass and to inquire").

■ To evaluate the propriety of an Exemption 7(C) withholding, the Court must balance the privacy interests involved against the public interest in disclosure. See SafeCard Servs., Inc., at 1205; United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Under this calculus, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" Davis v. Dep't of Justice, 968 F.2d 1276, 1282 (D.C.Cir.1992) (quoting Reporters Committee, 489 U.S. at 773, 109 S.Ct. 1468). In this instance, the private interest to protect persons from possible harm that may result in the release of particular information clearly outweighs the public interest in gaining access to this information. See SafeCard, 926 F.2d at 1206.

In the case at hand, the Plaintiff requested its own administrative file that the Service had compiled while investigating and inquiring into the Plaintiff's failure to file certain forms, and into Plaintiff's tax-exempt status. See Grisso Decl. ¶¶ 2, 3. These materials are defined as "records or information compiled for law enforcement purposes." In addition, two redacted pages contain the address of a complainant against the Plaintiff and unrelated, incidental medical information about a third party. The Service has properly withheld portions of these documents that were compiled for law enforcement purposes as mandated under FOIA Exemption 7(c) because the authorization of their release could cause harm to the complainant. Accordingly, Plaintiff's contention of bad faith is unsubstantiated, and lacks validity.

## D. No in camera review is warranted.

■ "The Court has 'broad discretion' to conduct an in camera review, if after examining agency affidavits, the court finds them to be insufficient." Kay v. F.C.C., 976 F.Supp. 23 (D.D.C.1997) (quoting Lam Lek Chong v. DEA, 929 F.2d 729, 735 (D.C.Cir.1991) and Carter v. Dep't of Commerce, 830 F.2d 388, 392 (D.C.Cir. 1987)). Here, though, the Court declines to conduct an in camera review of the withheld documents. In camera inspection of documents is generally considered to be too large a burden on the courts, and does not constitute a legitimate alternative to the agency offering adequate explanation. "[I]n camera review should not be resorted to as a matter of course, simply on a theory that 'it can't hurt,'" Quinon v. FBI, 86 F.3d 1222, 1228 (D.C.Cir.1996). No in camera review of the documents is necessary here, because the agency affidavits are sufficiently detailed and explanatory. Moreover, where Plaintiff has failed to

because bad faith does not enter into Court's review of a proper FOIA Exemption 3 assertion. Rather, the relevant question is whether the agency protected from disclosure information which is specifically exempted from disclosure by statute. Here, the Service properly adhered to the statute in question, and offered a rationale for redacting this information that is well-supported by case law and by the facts of this case.

submit concrete, tangible evidence that the Service acted otherwise, the agency affidavits are presumed to represent good faith. *See Kay*, 976 F.Supp. at 33 (holding that a mere allegation of agency bad faith, without more tangible evidence supporting that allegation will not suffice to undermine the sufficiency of agency submissions).

### III. CONCLUSION

For the foregoing reasons, the Service's two motions for summary judgment shall be granted. Notwithstanding its early confusion, the Service has established that there is no genuine issue of material fact in dispute by presenting clear, specific, detailed affidavits that contain no contradictory evidence on the record or evidence of bad faith. *See Hayden*, at 1387. Moreover, Plaintiff's rationale for discovery is invalid because the propriety of the audit is not at issue in this case. Rather, the question here is whether the Service properly discharged its disclosure requirements under the FOIA. The Service has established that its search was reasonably calculated to uncover all relevant documents. Because the FOIA requires searches to be reasonable, but not necessarily exhaustive, the Service's earlier failure to discover the documents that were later identified is not grounds for this Court to authorize formal discovery.

In addition, the Service now has turned over everything requested with the exception of the information properly segregated and redacted under Exemptions 3 and 7(C). Since Plaintiff failed to produce evidence of additional documents, the Court cannot permit discovery and deny summary judgment on these grounds. Finally, *in camera* review of the remaining documents is unnecessary, since there is neither evidence of bad faith, nor serious doubt as to the affidavits' credibility.

An appropriate order accompanies this memorandum opinion.