**DISTRICT OF COLUMBIA,**
Appellant/Cross–
Appellee,

v.

**FRATERNAL ORDER OF POLICE METROPOLITAN POLICE LABOR COMMITTEE,** Appellee/Cross–Appellant.

Nos. 09–CV–255, 09–CV–256,
09–CV–257, 09–CV–737.

District of Columbia Court of Appeals.

Argued Jan. 20, 2010.
Decided Dec. 22, 2011.

Mary L. Wilson, Senior Assistant Attorney General, with whom Peter J. Nickles, Attorney General of the District of Columbia, Todd S. Kim, Solicitor General of the District of Columbia, and Donna M. Murasky, Deputy Solicitor General at the time the briefs were filed, were on the brief for appellant/cross-appellee.

Paul A. Fenn with whom Anthony M. Conti, were on the brief, for appellee/cross-appellant.

Before BLACKBURNE–RIGSBY, Associate Judge, and RUIZ, Associate Judge, Retired,* and FERREN, Senior Judge.

PER CURIAM:

This appeal arises from a complaint to enforce a request for documents that the Fraternal Order of Police/Metropolitan Police Labor Committee ("FOP") submitted to the District of Columbia Metropolitan Police Department ("MPD") pursuant to the District of Columbia Freedom of Information ACT ("FOIA").[1] At the outset, the case presents the question whether, and if so to what extent, the trial court in a civil case—once its final order is on appeal—has authority to entertain a motion by the appellant for relief from that order under Superior Court Civil Rule 60(b)(6) based on allegedly "changed circumstances." We conclude that the trial court correctly determined that it could not enter a ruling on the Rule 60(b) motion that would have the effect of altering the order on appeal, but misunderstood that it had intermediate

authority to consider the merits of the motion and indicate whether it would grant relief if the case were returned to it. We, therefore, remand the case so that the trial court may consider the motion on the merits in light of the changed circumstances the District has presented. Judge Ruiz's concurrence addresses substantive FOIA and related issues to be decided on remand. Judge Ferren's concurrence discusses various considerations applicable in delineating the authority of the trial and appellate courts with respect to post-appeal motions for relief from judgment.

## I.

On February 4, 2009, the trial court entered a final order imposing on the District of Columbia a schedule for "full production" of all documents—redacted to satisfy protected privacy interests—responsive to two of five FOIA requests by the FOP, for police trial board records and EEO investigation files.[2] The same day the court entered another order awarding attorney's fees against the District, although in an amount substantially less than FOP had asked for. The District appealed both orders; FOP cross-appealed the second one.

The next month, on March 23, the District filed a Rule 60(b)(6) motion to "amend or clarify" the February 4 order, arguing that the FOIA requests "should be dismissed and judgment entered for the District" because:

1. "the request does not reasonably describe the records subject to disclosure";

---

* *Judge Ruiz* was an Associate Judge of the court at the time of argument. Her status changed to *Associate Judge, Retired,* on September 1, 2011.

1. D.C.Code §§ 2–531 et seq. (2001).

2. The FOIA requests and the nature of the documents requested are described in Judge Ruiz's concurrence.

2. "the records sought are exempt from disclosure," as disclosure would "constitute a clearly unwarranted invasion of personal privacy"; and

3. "even if the documents sought are subject to disclosure, the production is overly burdensome and causes an undue hardship on the [Metropolitan Police] Department"; or

4. "In the alternative, the Final Order should be amended ... to clarify the scope of the request and documents sought ... [and] to minimize the burden on the Department and the risk of violating officers' privacy.... [The court should] allow the Department to produce a summary of each file[;] ... or if the entire file is subject to production, the FOP should be ordered to pay a private vendor to redact and copy the records."

The trial court does not appear to have addressed the District's first argument, and the District does not question that omission here. However, at a hearing on June 12, 2009, the court rejected the District's second and third arguments—the claimed "privacy exemption" and "undue hardship"—because the February 4 order was on appeal, under this court's exclusive jurisdiction. The judge said, "I'm certain that I could not amend or clarify ... without so changing my final order and so challenging the appealed order as to affect the issues that [the] Court of Appeals must address in this case."

The trial judge characterized the fourth, alternative argument as the proffer of "new circumstances" reflecting the "burdensomeness of production" that justified "changing the manner and timing and cost of production." The judge said that she

was "inclined to consider that claim" and "inclined to grant relief of some sort," although she hadn't "fully explored how." She concluded, nonetheless, that "even that relief requires a remand of the case from the Court of Appeals," because a change in "that piece of the order" would be "directly challenging the appealed order[,] and that I cannot do ... unless the District seeks a remand of the case for that purpose." The judge accordingly denied the Rule 60(b) motion in full on June 12, 2009, and the District appealed.

In response to the trial court's June 12 order denying its motion, the District filed a motion in this court to stay the February 4 production order pending resolution of the District's appeal. In the alternative, if this court were unwilling to grant a stay, the District cited the trial judge's inclination to grant partial relief under Rule 60(b) and asked for a remand under *Smith v. Pollin*[3] so that the trial court "will have jurisdiction to modify the terms of its production order." This court granted the stay on July 23 and thus denied the motion for remand "as moot." At that point attention to the jurisdictional issue under Rule 60(b) abated until we addressed it here on appeal of the trial court's June 12, 2009 order.

## II.

◼ In *Smith v. Pollin*, a case on which this court has long relied,[4] the court had to determine the procedure to follow when a party in a civil case, after an appeal is pending, files in the trial court a Rule 60(b) motion to vacate the court's judgment. The D.C. Circuit Court of Appeals answered:

---

3. 194 F.2d 349 (D.C.Cir.1952).

4. *See, e.g., In re M.O.R.,* 851 A.2d 503, 508 n. 3 (D.C.2004); *Umana v. Swidler & Berlin,*

*Chartered,* 745 A.2d 334, 337 (D.C.2000); *Carter v. Cathedral Ave. Co-op., Inc.,* 532 A.2d 681, 684 (D.C.1987).

It is clear that the District Court could not grant a motion for a new trial in a case which is pending in this court upon appeal. Jurisdiction of the case is in this court while the appeal is pending.... We are of [the] opinion, therefore, that, when an appellant in a civil case wishes to make a motion for a new trial on the ground of newly discovered evidence while his appeal is still pending, the proper procedure is for him to file his motion in the District Court. If that court indicates that it will grant the motion, the appellant should then make a motion in this court for a remand of the case in order that the District Court may grant the motion for a new trial.[5]

The court made clear that this Rule 60(b) analysis is not limited to motions alleging newly discovered evidence.[6]

By acknowledging with respect to the District's fourth argument that she was "inclined to consider ... manner and timing and cost of production" and grant "relief of some sort," the trial judge came a long way toward announcing that she "will grant the motion,"[7] at least in part, upon a remand. One therefore might have expected the District to respond in a follow-up pleading (we put it colloquially): "Thank you, judge; if you'll go further to say that you're all but certain you'll grant us relief, we'll represent that to the Court of Appeals and ask for a remand under *Smith v. Pollin*." Or, even better, to make an assuredly clear-cut presentation to this court, the District's attorneys should have informed the trial judge that,

under the express language of *Smith v. Pollin*, a remand would be available only if the trial court were to state, definitively, that the 60(b) motion "will" be granted; and that if she was merely "inclined" but not yet certain that she would grant "some relief," she should hold an evidentiary hearing to answer unequivocally, yes or no, so that the appellate court would know, to a certainty, whether it should remand under *Smith* (after a "yes") or retain the case (after a "no") for resolution of both the Rule 60(b) denial (assuming its appeal) and the appeal of the underlying February 4th order. There was no jurisdictional bar to the trial court's conducting such a hearing.[8] Indeed, in many if not most instances, such a hearing would be required before the trial court could determine, and an appellant could represent to this court, that the trial court "will" grant the relief requested if the case is remanded.

At the time that it filed its 60(b) motion papers, however, the District apparently believed that the trial court could rule definitively without a remand. Although the first footnote in the motion referenced *Smith v. Pollin* and ensuing cases in this court,[9] the motion papers did not ask the trial court to help facilitate a *Smith* remand. Focusing on "changed circumstances" allegedly experienced during the District's efforts to comply with the February 4 order, the District instead expressed its belief that the *Smith* line of cases left jurisdictional room for the trial court to grant complete relief under 60(b) without a remand. FOP attacked that contention in its opposition to the motion. It stressed the

---

5. *Smith, supra* note 3, 194 F.2d at 350.

6. *See id.* (referring to "Rule 60(b), which treats of motions for new trials, upon newly discovered evidence *among other things*") (emphasis added).

7. *Id.*

8. *See Carter, supra* note 4, 532 A.2d at 684 (noting that although "the filing of the notice of appeal indeed does divest the trial court of jurisdiction," that filing "does not divest the trial court of all power to act upon the motion").

9. See *supra* note 4.

very reason for denying the District's motion which the trial court had identified, namely, that the motion "directly challenge[d] the appealed order" [10] and thus would improperly lodge simultaneous jurisdiction over the same order in two courts.

In its reply to FOP's opposition, the District recognized, in the words of our *Carter* decision, "the confusion and waste of time that might flow from having two courts deal with a single case at the same time." [11] But, citing the need for "common-sense flexibility," [12] the District pressed on for a definitive ruling on the motion, asking for a trial court amendment to the February 4 order that "would either moot the appeal or at the very least narrow the issues for appeal." After the trial court denied the motion, the District asked this court for a remand under *Smith v. Pollin* only in the event that we were to deny the requested stay of the underlying order pending appeal. Clearly, therefore, the District never asked the trial court, or this court, for the remand it seeks now on appeal of the 60(b) denial.

Implicit in the District's position has been a perception that the trial court would rule favorably on the 60(b) motion first, followed by appellate court consideration of a pared-down, if not withdrawn, final order—a smoothly sequential, not simultaneous, dealing with the trial court's February ruling. Conceivably, apart from

what *Smith v. Pollin* requires, that sequence might be the practical reality in some cases, but one should not assume that the two courts would not be working on the February 4 order at the same time, particularly if the trial court required an extended evidentiary hearing on the motion to consider the changed circumstances. This is not a case, such as an ongoing proceeding in family court where a custody determination is on appeal but the trial court is asked to rule, while the appeal is pending, on other sundry matters involving the child, or on a material change in circumstances as specifically contemplated by statute. [13] Here, rather, if the trial court could grant relief under Rule 60(b) while the appeal of the February 4 order remained lodged on this court's docket, it is entirely possible that both courts would be simultaneously reviewing allegations concerning the appealed order. [14] That is exactly the situation which a *Smith v. Pollin* remand is intended to forestall. In sum, without a remand, the District was not entitled to 60(b) relief, but it was entitled to court consideration of the merits of its motion.

We are therefore left with a trial court failure to address the District's 60(b) motion, other than to deny it, among other reasons, because of a seeming misapprehension that the court lacked jurisdiction even to conduct a hearing on the merits of the motion until it received the power, by

10. *M.O.R., supra* note 4, 851 A.2d at 508 n. 3.

11. *Carter, supra* note 4, 532 A.2d at 684 n. 7.

12. *Id.*

13. *See Sampson v. Johnson*, 846 A.2d 278, 279 n. 1 (D.C.2004) ("The pendency of the father's appeal ... did not undermine the trial court's authority to entertain ... motions ... based on a material change of circumstances."); *In re S.C.M.*, 653 A.2d 398, 403 (D.C.1995) (characterizing custody order on appeal as "an interim, experimental measure," "in the na-

ture of a preliminary injunction," that did not preclude trial court from addressing other issues, including modification of custody because of changed circumstances).

14. *See In re M.O.R., supra* note 4, 851 A.2d at 508 n. 3 (D.C.2004) (noting that "the trial court is always free to consider and decide motions that are directed to changed circumstances *and that do not directly challenge the appealed order* ") (emphasis added).

way of a remand, to grant relief. On the other hand, based on its own misunderstanding of the precise requirements of the law, the District did not press the trial court to examine its jurisdictional premise, so that the District could obtain a definitive expression from the trial court on how it would decide the 60(b) motion as the predicate necessary for seeking a *Smith* remand. Due to these mistaken assumptions about what the court could and could not do with respect to the 60(b) motion once the underlying order had been appealed, the trial court denied the motion without substantive consideration of the District's new argument and proffered evidence.

■ In the first footnote to its motion, the District did cite *Smith v. Pollin* and three subsequent cases from this court that discussed remand procedure in the context relevant here. The District construed them one way, erroneously contending that a remand was not required for trial court jurisdiction to grant relief, while FOP correctly maintained, and the trial court agreed, that the motion challenged the order on appeal and thus required a remand before relief could be granted. Neither the parties nor the trial court, however, recognized that the court had intermediate authority to entertain the motion pending appeal, without a remand, limited only by the jurisdictional requirement that the actual grant of the announced relief had to await the mandate from this court returning the case to the trial court.[15]

Although the trial court's reason for denying the motion was technically correct, it was not fully informed, as it should have been, by consideration of the merits of the District's motion because of a lack of proper understanding by all involved of the court's authority to consider the new arguments made and evidence proffered in the District's motion. *See Johnson v. United States,* 398 A.2d 354, 364 (D.C.1979) (noting that an informed choice must be drawn from a "firm factual foundation"). The confusion evident in these proceedings reflects the fact that our cases have not spoken with sufficient specificity on this issue. Given the primacy of protecting the privacy interests of third parties in this FOIA case,[16] the proper course is to require the parties and the trial court to address the 60(b) motion anew with respect to the three issues the District has raised on appeal (see paragraphs 2, 3, and 4 *supra* ). We, therefore, reverse and remand the trial court's June 12, 2009 order denying the 60(b) motion. We also remand the underlying production and attorney's fee orders of February 4, 2009 for further proceedings consistent with this opinion (and thereby remove the four interrelated appeals in this case from our docket.).[17]

*Case Remanded.*

RUIZ, Associate Judge, Retired, concurring:

The FOP filed FOIA requests for hundreds of disciplinary case files and equal employment opportunity ("EEO") case files that were created during the course

**15.** *See* cases cited *supra* note 4.

**16.** *See Piper v. U.S. Dep't of Justice,* 374 F.Supp.2d at 78 (D.C.C.2005).

**17.** The denial of the 60(b) motion was appealed in No. 09–CV–737. The parties also appealed the trial court's two orders issued Feb-

ruary 4, 2009, one ordering that the District produce the documents and another awarding attorney's fees to FOP. These orders were appealed by the District in Nos. 09–CV–255 and –256, and cross-appealed by the FOP in 09–CV–257.

of MPD internal investigations of its officers from 1998 to 2004.[1] After a trial, the court ruled that the requested files are not wholly exempt under FOIA, and ordered that they be produced, redacted as necessary to satisfy protected privacy interests. The trial court denied the District's subsequent Rule 60(b) motion to amend or clarify the production order, on the ground—which as discussed in the *per curiam* opinion we determine was correct—that it did not have jurisdiction to alter the order on appeal. But misapprehending its authority, the court also refused to consider the motion on the merits and to review documents presented with the motion to determine whether it would grant relief if jurisdiction were returned to it. We now remand the case for further proceedings so that the court may fully consider the District's motion. I write separately to set out the legal principles applicable to the substance of the District's claims, and to add that on remand the court should: (1) consider the additional evidence presented, including an *in camera* review of the subset of the redacted disciplinary case files that was proffered by the MPD to the trial court with its 60(b) motion (and any other documents the trial court deems relevant), before deciding whether to grant or deny the motion in accordance with governing legal principles discussed herein, and (2) as warranted, amend its orders regarding the MPD's production of documents, the costs to be borne by FOP, and the award of attorney's fees.

## I. Proceedings to Date

### A. The FOP's Information Requests

Between November 2003 and November 2004, the FOP submitted five information requests to the MPD relating to MPD's internal records of investigations, disciplinary proceedings and EEO investigations of MPD personnel.[2] Only two are relevant to this appeal:

—On October 14, 2004, the FOP requested, pursuant to FOIA, "copies of all records of Adverse Action Hearings/Trial Boards for all [MPD] departmental personnel for the last five years." The FOP specified that the records should contain "the affected member's rank, race/ethnicity, gender, hearing month/year, charge(s), disposition of charge(s), [the] panel's recommendation, [and the] penalty imposed." In response, the MPD produced charts that summarize details of trial board cases that were initiated from 1999 to 2004. The charts include the case number, race and

1. In another pending appeal, FOP requested similar files that covered a different period. *See District of Columbia v. Fraternal Order of Police Metropolitan Labor Committee,* Nos. 09-CV-758, 09-CV-920.

2. FOP filed three other requests: (1) A November 20, 2003, request for "[d]ata on corrective and adverse actions taken during the preceding five ... year period, categorized according to [the] nature of the misconduct ... the date of any corrective or disciplinary action taken, and the level of discipline or type of corrective action which resulted"; (2) A September 7, 2004, request for "copies of all records of disciplinary and corrective actions for departmental personnel in the rank of lieutenant and above generated within the

last five ... years"; and (3) A November 15, 2004, request for "copies of all records of misconduct investigations, EEO investigations, disciplinary and corrective actions for all departmental personnel in the rank of Inspector and above and the civilian equivalent generated from the member's date of appointment to the present time or the time of separation from the agency." The trial court found for the District with respect to those requests after determining that they were either improper or substantively answered by MPD. These rulings are not challenged on appeal. It appears that a sixth request was filed and later disposed of by order of Judge Geoffrey Alprin. Judge Alprin's order also has not been challenged in these proceedings.

sex of the officer, the charges against the officer, and the recommended penalty.

—On October 29, 2004, the FOP requested, pursuant to the FOIA, "copies of all records generated in the last five ... years pertaining to all members of the Department, sworn and civilian, that have been the subject of an EEO investigation." In response, the MPD produced a chart summarizing fourteen EEO investigations that were initiated during the years 2001 through 2004. The chart includes each officer's rank, race, sex, the charge against the officer, and the final penalty, if any.

## B. Proceedings in Superior Court

The FOP, unsatisfied with the MPD's disclosures, filed a complaint in Superior Court in which it alleged that the MPD had failed to fulfill its obligations under the FOIA with respect to all five information requests. At trial, the District of Columbia argued that the requested documents fell under the FOIA's privacy exemption and related provisions of the District of Columbia Comprehensive Merit Personnel Act ("CMPA"). In the alternative, the District argued that redacting and copying the files would impose an "unreasonable" burden on the MPD and that, therefore, the files were not subject to production under FOIA.

In support of these arguments, the District presented testimony from Inspector Glenn Shearod, the former supervisor of the MPD's Disciplinary Review Division ("DRD"); Inspector Dierdre Porter, the Director of the DRD; and Jacquelyn Johnson, the MPD's former EEO Officer. They testified that the files requested by the FOP are voluminous and contain private information regarding the MPD offi-

cers who were the subject of the internal investigations. Much of the District's evidence focused on the October 14, 2004 information request, which sought access to "all records" within the last five years related to trial board hearings (also referred to as adverse action hearings) for "all" MPD departmental personnel. The District's witnesses explained that a trial board hearing is a "trial-like" proceeding that is held when an internal "disciplinary action" against an MPD employee results in a recommendation that the employment should be terminated. The files from a trial board hearing may include several hundred pages (sometimes as much as a thousand pages) consisting of investigative reports, exhibits, transcripts, and other documents.

During trial it became apparent that the MPD had not conducted a systematic review of the physical records that were relevant to the FOP's requests. Inspector Shearod explained that the summary charts regarding the trial board hearings, which were produced in response to the October 14, 2004 request, were created by reviewing the MPD's log books and pre-existing case reports.[3] The actual files, many of which were in long-term off-site storage, had not been reviewed in detail, except for spot-checking the information in the charts for accuracy.[4] Likewise, the charts relating to the EEO investigation files that were the subject of the October 29, 2004 request were generated from information in the DRD's computer system and log book, not the actual EEO case files. The MPD's former EEO Officer did not know how many pages were in the EEO files or how long it would take to produce them. Nor did the MPD's wit-

3. For most of the years in question, the MPD did not have a computerized database.

4. Inspector Porter checked every fifth report listed on the chart against the physical case files, and confirmed that the information she checked in the charts was accurate.

nesses know whether all the EEO case files were handled by the DRD or whether there might be additional EEO complaints that were managed by other agencies.[5]

At the close of trial, in April 2008, the court granted judgment for the FOP with respect to the requests relating to the production of trial board files and EEO investigation files, finding that the FOP had requested the entire case files—rather than the summary charts that were produced by the MPD—and that the MPD had failed to conduct a reasonable search for the files as required by FOIA.

Following a number of status conferences with counsel, on February 4, 2009, the trial court issued a final written order that imposed production deadlines for the trial board files and EEO investigation files and provided that the MPD would be reimbursed for its production costs, at a rate of $0.25 per page.[6] In another order of the same date, the trial court awarded $49,888.25 in attorney's fees to the FOP, $17,705.78 less than the $67, 594.03 that had been requested by the FOP in its post-trial filings. The District appealed the order requiring production (No. 09–CV–255) and award of attorney's fees (No. 09–CV–256), and the FOP cross-appealed. (No. 09–CV–257).

Throughout the rest of the month of February 2009, the MPD attempted to produce twenty-four trial board hearing files, expending 343 hours of MPD personnel time to review, redact, and copy the files. The total cost to the MPD was $8,026.20, at least four times the amount that FOP had been ordered to pay the MPD. Shortly before the date it was to produce the twenty-four files to the FOP, the MPD determined that the files still contained sensitive personal information and withheld production of the files.

The following month, the District filed a motion to amend or clarify the trial court's February 4 order, pursuant to Superior Court Rule of Civil Procedure 60(b)(6).[7] The District reiterated its arguments, that the trial board hearing files and the EEO investigation files are exempt from production under FOIA's privacy exemption, and that disclosure of the EEO investigation files would conflict with the confidential nature of EEO complaints pursuant to MPD policy. The District also renewed its argument that the burden of redacting the voluminous trial board hearing files caused an "undue hardship" on the MPD. This time, it provided additional support for these assertions: an affidavit by Inspector Porter and a proffer to produce a sample trial board file for *in camera* review. As an alternative form of relief, the District requested that the trial court limit the scope of the pending FOIA requests or order the FOP to pay for a private vendor to redact and copy the trial board hearing and EEO investigation files.

As noted in our *per curiam* opinion remanding the case, the trial court denied

---

5. Inspector Shearod testified that the DRD receives information about only those EEO investigations that are recommended for disciplinary action. A separate EEO office within the MPD coordinates EEO investigations and sends the final recommendations for disciplinary action and the relevant portions of the EEO case files to the DRD.

6. The reimbursement rate was based on cost estimates that were provided by the District.

7. Rule 60(b)(6) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than 1 year after the judgment, order, or proceeding was ordered or taken.

the District's motion to amend in a ruling from the bench on the ground that the District's pending appeal of the February 4 order precluded any trial court action that would change the production order that the District had appealed. The trial court "recognize[d] that the District has raised one new issue and that ... no means of production could prevent the disclosure of privileged, private information," but concluded, that this "issue was litigated at trial" and "on the record presented at trial and the record before the Court ... the Government could not sustain its burden" of showing that disclosure was not required by FOIA. The court did not consider the Porter affidavit or take up the District's offer to review a sample file *in camera*. However, the trial court said it was "inclined to consider" and grant "relief of some sort" regarding the District's claim that there were "new circumstances ... for changing the manner and timing and cost of production." The District appealed the denial of its 60(b) motion. (No. 09–CV–737).

## II. Remand

On remand, the trial court's consideration of the District's motion must take into account the District's arguments that FOIA does not require the MPD to produce either the trial board hearing files or the EEO investigation files because: (1) the files fall under FOIA's privacy exemption; and (2) FOIA does not require the type of "extensive and burdensome" redaction that would be necessary to protect the privacy of the officers who are discussed in the requested files. Depending on the trial court's resolution of these issues, it might also be necessary to revisit the scope of the production order, reimbursement of the MPD's costs, and award of FOP's attorney's fees.

## A. The Privacy Exemption

FOIA exempts from disclosure "[i]nformation of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy[.]" D.C.Code § 2–534(a)(2) (2001). The statute specifies that where some, but not all, of the information contained in a document is exempt,

[a]ny reasonably segregable portion of a public record shall be provided to any person requesting the record after deletion of those portions which may be withheld from disclosure.... In each case, the justification for the deletion shall be explained fully in writing, and the extent of the deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption ... under which the deletion is made. If technically feasible, the extent of the deletion and the specific exemptions shall be indicated at the place in the record where the deletion was made.

D.C.Code § 2–534(b). The District and the FOP agree that the trial board hearing files and EEO investigation files contain personal information that is exempt from disclosure under § 2–534(a)(2). The issue the trial court must decide is whether FOIA requires that the MPD provide redacted versions of the non-exempt portions of these documents to the FOP, and the manner in which the redaction is to be indicated and justified.

Because FOIA mandates that "[a]ny reasonably segregable portion of a public record shall be provided to" the requestor after the exempt portions of the record have been deleted, D.C.Code § 2–534(b), it is clear that the fact that responsive documents contain some exempt information does not justify an agency's decision to withhold the documents in their entirety.

As we have explained: "A document often contains some information which is exempt from disclosure and other information which is not. The Act does not contemplate an 'all or nothing' approach where this situation arises." *Washington Post Co. v. Minority Bus. Opportunity Comm'n*, 560 A.2d 517, 522 (D.C.1989). Indeed, the section of the FOIA that creates the privacy exemption provides for the withholding of "[*i* ]*nformation* of a personal nature," rather than documents. D.C.Code § 2–534(a)(2) (2001) (emphasis added); *see also Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C.Cir.1977) ("The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.").[8] Therefore, "[i]t has long been a rule ... that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Id.* Further, FOIA makes clear that "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Id.* at 251; *see also* D.C.Code § 2–534(b) (requiring any deletions to be "explained fully in writing").

It is clear that, viewed against these requirements, the MPD did not meet its burden at trial of justifying withholding all the trial board hearing and EEO investigation files. As we have recently emphasized, FOIA's mandate for broad disclosure requires that the statute's disclosure provisions be interpreted "liberally," and

the statutory exceptions "narrowly." *Padou v. District of Columbia*, 29 A.3d 973 (D.C.2011). The question in this case was whether, consistent with that mandate, MPD had to provide redacted documents with explanations for the claimed exempt information, or could withhold the documents in their entirety. But as the trial court concluded in its April 2008 oral ruling, the MPD had not even undertaken a systematic review of all of the requested documents when it prepared its responses to the FOP's requests. The approach it employed to check the accuracy of the summaries it prepared, see *supra* note 3, did not satisfy FOIA's strict requirements that any withholding be justified. *Cf. Riley v. Fenty*, 7 A.3d 1014, 1018 (D.C.2010) (concluding that redaction and identification of relevant exception were unnecessary in unusual circumstances where records, as requested, were entirely exempt under a provision safeguarding confidentiality of records pertaining to youths in custody of DYRS, D.C.Code § 16–2332(b)(1)). As a result, based on the scant record presented at trial, the judge granted judgment to FOP ordering disclosure of the requested trial board and EEO investigation files.

**B. *In Camera* Review of Additional Information**

Following the trial court's order, the MPD began the process of reviewing and redacting the files that the trial court had ordered to be produced in response to the FOP's requests. This allowed the MPD to better assess the extent to which exempt information could be redacted from nonexempt information in the files. After the MPD was dissatisfied with its initial efforts to sanitize the files to protect the privacy

---

**8.** The D.C. FOIA is modeled on the federal Freedom of Information Act, and therefore we look to decisions interpreting like provisions in the federal act when we interpret the meaning of the D.C. FOIA. *See, e.g., Hines v. District of Columbia Bd. of Parole*, 567 A.2d 909, 912 (D.C.1989).

of the subject officers, it decided to withhold several trial board files that were previously thought to be ready for disclosure. The District then filed its Rule 60(b) motion to amend the judgment asserting that the exempt information was, indeed, "inextricably intertwined" with the non-exempt information in the files and that sensible redaction was not possible. In support of this motion, the District submitted a new affidavit from Inspector Porter and offered to produce a sample trial board file for *in camera* review.

At that point the trial court should have considered the Porter affidavit and conducted an *in camera* inspection of the proffered trial board file. It appears that the trial court did not do so because it (incorrectly) thought it had no authority even to hold a hearing on the merits of the District's motion.[9] But as we explain in the *per curiam* opinion, although the trial court could not modify an order that was then pending appeal, it had authority to consider the motion so that it could advise the parties whether it would provide relief if jurisdiction over the case were returned to the Superior Court. This is what the court must now do on remand.

If the trial court is convinced that proper redaction is not feasible, the District's motion for relief should be granted. It is protection of the rights of third parties' confidential information concerning MPD officers which is statutorily exempt, that would "justify[ ] relief from the operation of the judgment." Super. Ct. Civ. R.

60(b)(6); *see* D.C.Code § 2–532(a)(2); *Piper v. U.S. Dep't of Justice,* 374 F.Supp.2d 73, 78 (D.D.C.2005).[10]

Before deciding whether it will (or will not) grant relief now that it has authority to do so pursuant to this remand, the obligation to make "[a]n informed choice among the alternatives requires that the trial court's determination be based upon and drawn from a firm factual foundation." *Johnson v. United States,* 398 A.2d 354, 364 (D.C.1979). Thus, even though the issue of the applicability of the privacy exception was litigated at trial, the court must consider the new information that the District asserts is critical to a legally correct FOIA analysis. In particular, the District retreated from its earlier assessment, made at trial, that it would be possible, although time-consuming, to produce properly redacted trial board files. As the trial court noted in its April 2008 oral ruling ordering that the files be produced, Inspector Porter had "testified at length about just how she would go about redacting private information from the disciplinary files in the trial board cases." The court noted that Inspector Porter had stated, "It can be done. It just would take time." But in her affidavit that accompanied the District's post-trial motion to amend the judgment, Inspector Porter described hundreds of hours of work that was performed during February 2009, and then concluded that "[d]espite the careful work performed by the recruits and in-

9. The court explained: "the cost, manner, and timing of production, which is the subject of my final order, if it's changed, will ... affect the issues on appeal such that the Government ... is directly challenging the appealed order and that I cannot do ... unless the District seeks a remand of the case for that purpose."

10. Had the MPD timely reviewed and attempted to redact the requested documents at the time it received the FOIA request, before trial, Inspector Porter could have testified at trial to the substance of the affidavit that was not produced until the Rule 60(b)(6) motion was filed. For this reason, the District's motion was not justified under Rule 60(b)(2) as presenting "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Super. Ct. Civ. R. 60(b)(2).

terns to redact all personal identifying information, we discovered errors in the 24 files prepared in February[.]" In short, Inspector Porter was changing her previous assessment, and asserting that proper redaction could *not* "be done" within MPD. It is incumbent upon the trial court to take that information into account in deciding whether to grant (or, in the context of *Smith v. Pollin* procedures, whether it would grant) the 60(b) motion.

In general, "an *in camera* review should not be resorted to as a matter of course, simply on the theory that 'it can't hurt.' " *Quinon v. F.B.I.*, 86 F.3d 1222, 1228 (D.C.Cir.1996). Indeed, FOIA provides that a trial court's decision to examine documents *in camera* is discretionary, *see* D.C.Code § 2–537(b) (2001) ("[T]he court ... *may* examine the contents of such records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in § 2–534.") (emphasis added), and the court has "broad discretion" to determine whether to conduct such an inspection. *Quinon*, 86 F.3d at 1228. "[T]he costs [of *in camera* inspection] include the possibly onerous burden imposed upon the trial court and the fact that a decision based on an *in camera* review may have little precedential value because it is unable to describe with specificity the basis for its decision." *Id.*

Nevertheless, in this case *in camera* inspection by the trial court is the most efficient way—both from the point of view of allocation of responsibility and timeliness—to determine the validity of the District's claim that the exempt information in the trial board files could not reasonably be segregated so that intelligible documents could be disclosed. *See Washington Post Co.*, 560 A.2d at 523 ("Appellate courts are ill-equipped to conduct their own investigation into the validity of specific claims of exemption, and the trial judge should therefore articulate the precise relationship between each such claim and the contents of specific documents held to be exempt."). The D.C. Circuit has set forth several factors that may be relevant to determining when *in camera* inspection is appropriate:

> [I]n camera review may be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency. Another crude, albeit important, factor to be considered is the number of the withheld documents. Finally, when the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents, *in camera* review may be more appropriate.

*Quinon*, 86 F.3d at 1228 (citations omitted); *see also Allen v. Central Intelligence Agency* 636 F.2d 1287, 1298 (D.C.Cir.1980) ("Where the examination of the requested documents requires herculean labors because of their volume, the reluctance to conduct such inspection is understandable. But when the requested documents are few in number and of short length ... [a]n examination of the documents themselves in those instances will typically involve far less time than would be expended in presentation and evaluation of further evidence."), *overruled on other grounds* by *Founding Church of Scientology of Wash. D.C., Inc. v. Smith*, 721 F.2d 828 (D.C.Cir. 1983). Here, as discussed in *Quinon*, part of the dispute "turns on" the contents of the withheld trial board files. 86 F.3d at 1228. In addition, although the sample set of documents that was offered for *in camera* review, consisting of approximately 400 pages, would require the trial judge to invest some time to review them, it would not impose "herculean labors" on the court. *Allen*, 636 F.2d at 1298. Further-

more, the Porter affidavit did not "meaningful[ly]" discuss what portions of the documents are exempt or non-exempt such that an *in camera* inspection would have been redundant.[11] *Quinon*, 86 F.3d at 1228. Specifically, although the Porter affidavit thoroughly catalogues the types of exempt information that "may" be found in a trial board file, it does not identify which documents actually do contain such information, nor does it explain why such documents cannot be redacted to protect the privacy interests of the officers who were the subject of disciplinary proceedings, yet retain information that would be of use to FOP.[12] The trial judge's *in camera* inspec-

tion of a sample trial board file is now (and would have been when the motion was filed) the most efficient means to resolve some of the questions raised by the District's Rule 60(b) motion. The court also could hold a hearing to question Inspector Porter about details missing from her affidavit.[13]

## C. What is "reasonably segregable"?: Intelligibility and Burden on the Agency

FOIA requires the agency to produce "[a]ny reasonably segregable portion of a public record ... after deletion of those portions" that are exempt from disclosure.

11. The Porter affidavit states, in relevant part: The adverse action and trial board hearing files ... contain the name of the subject officer and witnesses and all documents relating to an investigation of the alleged misconduct. The investigative portion of the files contains witness statements, findings and conclusions, and recommendations on the penalty.... [T]he files include biographic information on the officer who is the subject of the adverse action or trial board. The biographic information may include date of birth, race, employment history with the Department, salary, and any prior disciplinary action. If the alleged misconduct involves a personal matter, such as allegations of domestic abuse, the files may contain additional personal information, such as the officer's home address, names of family members, including minors, the identity and personal information of non-MPD employees, arrest records from other jurisdictions, the sexual orientation of the officer, and information about extra marital affairs. If the alleged misconduct includes injuries or allegations relating to drugs, the files may contain medical information. The files also include a transcript of the adverse action or trial board hearing.

12. In this context, the D.C. Circuit described an agency's burden to demonstrate "non-segregability":

In addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dis-

persed throughout the document. Armed with such a description, both litigants and judges will be better positioned to test the validity of the agency's claim that the non-exempt material is not segregable. For example, if only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable because the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases might be accepted. On the other extreme, if a large proportion of the information in a document is non-exempt, and it is distributed in logically related groupings, the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information.

*Mead Data Central, Inc.*, 566 F.2d at 261 (footnotes omitted).

13. The District's argument that the exempt information in the requested documents cannot reasonably be segregated focuses almost exclusively on the trial board files. On the record before us, we see no evidence that would justify withholding all of the EEO investigation files. Accordingly, on remand the District must supplement the record and proffer EEO files for *in camera* inspection if it wishes to extend its argument to such files as well.

D.C.Code § 2–534(b). The District argues that because FOIA requires only "reasonable" redaction of responsive documents, where "the MPD has been forced to do a line-by-line review of hundreds of pages in each file to remove" personal information, "redaction is not reasonable" and is therefore not required by the FOIA. Those cases that have interpreted the word "reasonable" as it applies to FOIA's production requirement, however, have concluded that the phrase "reasonably segregable" relates primarily to the quality of the information that is produced to the requestor, not simply to the agency's cost or burden of production. In *Mead,* the D.C. Circuit explained:

> Since the focus of the FOIA is information, not documents as a whole, and not simply words which the Government has written down, it should be legitimate to consider the information content of the non-exempt material which a FOIA plaintiff seeks to have segregated and disclosed. This does not mean that a court should approve an agency withholding because of the court's low estimate of the value to the requestor of the information withheld. *It does mean that a court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.*

*Mead Data,* 566 F.2d at 261 n. 55 (emphasis added). The D.C. Circuit elaborated in *Yeager v. Drug Enforcement Admin.:*

> The precise meaning of the term "reasonably" when used in conjunction with "segregable" has not yet been settled. Most interpretations connect it with the concept of intelligibility. This court looks to a combination of intelligibility and the extent of the burden in "editing" or "segregating" the nonexempt material.

*Yeager v. Drug Enforcement Admin.,* 678 F.2d 315, 322 n. 16 (D.C.Cir.1982) (citations omitted); *see Antonelli v. Federal Bureau of Prisons,* 623 F.Supp.2d 55, 60 (D.D.C.2009). (applying FOIA's "reasonableness" limitation on disclosure and concluding that, "in order to justify withholding entire documents, an agency must demonstrate that the 'exempt and nonexempt information are "inextricably intertwined," such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value' ").

In this case there has not been a determination by the trial judge that the redactions required to ensure privacy of confidential and personal information would render the requested documents unintelligible.[14] That is a task for the trial court on remand. Without such a determination it would not be appropriate, as the District has urged in the trial court and on appeal, to permit the MPD to withhold entire documents based solely on the burden of redacting documents for production. *See, e.g., Tax Analysts v. Dep't of Justice,* 845 F.2d 1060, 1067 (D.C.Cir.1988) (requiring that the Department of Justice make district court tax decisions available and noting that, "as we have incanted so often, the [FOIA] does not confer judicial discretion

14. A document filed under seal with this court by FOP, for example, does not demonstrate that the redactions made by MPD are so extensive as to make the resulting document unintelligible. In its motion to supplement the record with this document, however, FOP cautions that "there is a good chance, given the District's historical inability to properly redact documents, that confidential personal information remains in the subject file." The FOP appears to be suggesting, in other words, that more extensive redaction might be necessary.

to balance its dictates against the administrative burdens of disclosure"). To allow the "burden of production" to be interposed as a reason to turn down a request for documents runs counter to FOIA's purpose to foster disclosure of information, particularly where there is no suggestion that the request is unreasonably broad or intended to harass the agency.[15] As the D.C. Circuit has explained:

> FOIA enunciates a "general philosophy of full agency disclosure," *Jordan* [*v. United States Department of Justice* ], 591 F.2d [753] at 755, and therefore requires attentive judicial review of agency exemption claims. The review obligation FOIA imposes upon courts requires us to demand more detailed information than the [agency] has submitted in this case. Faithful implementation of the statute "add[s] significantly to the resource costs an agency"—and, we might add, reviewing courts—"must bear if [the agency] chooses not to disclos[e] material." The costs must be borne, however, if the congressional policy embodied in FOIA is to be well served.

*Senate of Puerto Rico ex rel. Judiciary Comm. v. Department of Justice,* 823 F.2d 574, 587 (D.C.Cir.1987) (quoting *Mead,* 566 F.2d at 261).

FOIA does not leave the burdened agency without recourse, as it permits some of the cost of production to be shifted to the requestor. *See* D.C.Code § 2–532(b) (providing that an agency may "establish and collect fees not to exceed the actual cost of . . . reviewing, and making copies of records"). If on remand the trial court determines that exempt information in the documents can reasonably be segregated but that the MPD's production costs will increase as a result of the need to dedicate more time than originally estimated, or to employ (or contract with) more experienced personnel, or to adopt better procedures to redact the documents so as to preserve the privacy of the subjects of the files and of third parties mentioned in such files [16]—personal information that must be protected [17]—then those costs should be borne by the FOP, as permitted by the statute. To the extent that the District's actual costs exceed the reimbursement amounts that were provided for in the trial court's production order based on earlier

---

15. The District argues that the exempt information is not "reasonably segregable" because there were numerous errors in redaction in the first set of trial board files that were prepared for disclosure. An agency cannot rely on its own mistakes in redacting documents as the basis for claiming an exemption from the obligation to make disclosure under FOIA. It must do a better job, or else convince the court that even due diligence will not safeguard protected privacy interests.

16. As the District notes, the privacy of the individuals who are discussed in the requested files is protected not only by the FOIA, but also by the CMPA. The CMPA provides, in language that tracks the FOIA's privacy exemption: "It is the policy of the District government to make personnel information in its possession or under its control available upon request to appropriate personnel and law-enforcement authorities, except if such disclosure would constitute an unwarranted invasion of personal privacy or is prohibited under law or rules and regulations issued pursuant thereto." D.C.Code § 1–631.03 (2001).

17. For this reason, the District may not waive—as the FOP suggests—objection to production of the documents based on the privacy exemption. Moreover, the FOP's assertion that the District "already has produced at least a small portion of the *exact same material* for which the FOP now seeks full disclosure" (emphasis added) is belied by the FOP's citations to the record, which discuss the District's initial production of summary charts instead of the original files that are the subject of these proceedings.

estimates, on remand the trial judge should consider additional evidence presented regarding the cost of production that will protect the privacy interests of affected persons. The trial court may properly leave it to the FOP, not the MPD, to decide whether the usefulness of the documents (once fully redacted) it seeks outweighs the cost it will have to bear to compensate for MPD's appropriate review and redaction.

### D. Attorney's Fees

The District's 60(b) motion did not ask the court to change the attorney's fee award, but both parties appealed the award. FOIA provides that "[i]f a person seeking the right to inspect or to receive a copy of a public record prevails in whole or in part in such suit, he or she may be awarded reasonable attorney fees and other costs of litigation." D.C.Code § 2–537(c). Where, as here, a party prevails on only some of its claims, "the trial court must exercise its discretion to determine what amount of fees, if any, should be awarded." *Fleming v. Carroll Publ'g Co.,* 581 A.2d 1219, 1229 (D.C.1990). Therefore, as the court will be reconsidering the FOIA production order, it should also, as warranted, reconsider the attorney's fee award.

The FOP objects to the trial court's three downward adjustments to the amount it requested in fees.[18] Because the attorney's fee award may be subject to change on remand, there is no reason to comment on specific claims at this juncture.

There is one component of the fee request that was rejected in the attorney's fee award, however, that bears reconsideration on remand. The trial court subtracted from the fee award, the amount ($4,963.50) FOP sought in relation to its motion for summary judgment with respect to all five FOIA requests. The trial court focused on the fact that the information requested in one of the FOP's requests was not based on FOIA but on the FOP/MPD Collective Bargaining Agreement. The trial court explained that this request "was dismissed on [the District's motion for] summary judgment because it was not based on the DC FOIA at all. . . . [T]he fundamental inadequacies of the claim should have been apparent to plaintiff at the time the Complaint was filed." Although the FOP's fee award may be reduced for work done on that part of the summary judgment motion that the trial court deemed unreasonable, the trial judge's reasoning did not justify subtracting the entire amount of the fees requested in connection with the motion for summary judgment, which included four claims that were based on FOIA. Moreover, the trial judge had rejected the notion that the

---

18. For example, the trial court subtracted approximately $12,000 (about 65%) from the FOP's request for fees resulting from post-trial work, explaining that:

> [A]fter the court orally entered its Findings of Fact and Conclusions of Law as to liability on April 4, 2008, the parties were directed to provide estimates of the cost-per-page to be borne by plaintiff for documents produced to FOP, and a reasonable proposed schedule for production of the documents by MPD. Neither party sufficiently complied with the court's order in this regard, such that the court has held numerous un-

necessary status hearings to resolve these matters, with insufficient input from either party. FOP's failures in this regard have resulted from an apparent preference for complaining about defendant's responses, rather than providing its own proposals to the court. This has resulted in unnecessary delay and many unnecessary court proceedings in resolving this matter.

The trial court made another, minor adjustment of $247 related to billing entry that lacked adequate detail, or seemed unrelated to this litigation.

fee request should be reduced because a particular motion was unsuccessful. On remand, the trial court should reconsider this aspect of the fee award to reflect in a proportionate manner the extent to which FOP has prevailed.[19]

\* \* \*

On remand to consider the District's Rule 60(b)(6) motion to amend the judgment, the trial court will need to address the following arguments in light of the legal principles discussed:

(1) whether the files sought by the FOP are completely exempt under FOIA because disclosure "would constitute a clearly unwarranted invasion of personal privacy," D.C.Code § 2–534(a)(2);

(2) whether, even if the documents are not completely exempt, the process of producing the documents for disclosure places an undue hardship on the government or renders the documents unintelligible or of minimal value to the FOP; and

(3) in the alternative, assuming disclosure is required, whether the court's production order should be amended a) to clarify its scope to minimize the risk of privacy violations by permitting a summary of each file, and b) to lessen the burden on the MPD by permitting it to engage a private entity to review, redact and copy the records for production, at FOP's expense.

These arguments cannot be considered in a vacuum, but must take into account the additional evidence submitted by the District: the Porter affidavit and the sample files proffered by the District after the MPD's redaction efforts. Thus, the trial court should conduct an *in camera* review of the sample files proffered as well as any other materials the trial court deems relevant to its consideration of the motion. If warranted by this review, the trial court should reconsider its rulings ordering disclosure of all the files, reimbursement of the District's costs of production, and award of attorney's fees to FOP.

FERREN, Senior Judge, concurring:

As noted in the court's *per curiam* opinion, implementation of the procedure contemplated in *Smith v. Pollin*[1] can trip up lawyers and judges. This prompts me to add several observations.

## I.

In this case, we have noted that the trial judge did not say definitively, in the words of *Smith*, I "will grant the motion."[2] She recognized that she could not have been definitive without examining more evidence at some kind of hearing, and yet she also apparently believed that she lacked jurisdiction to conduct any kind of 60(b) hearing without an approving word from this court. She therefore overlooked the intermediate possibility that she had power to hold a hearing on the motion that might lead her to say "yes" to particular relief, without having the additional power to grant that relief until we remanded the case and thereby released our jurisdiction.[3]

---

19. As the District argues, should the trial court amend its production order on remand, it should reconsider also the extent to which FOP is entitled to attorney's fees as a prevailing party.

1. 90 U.S.App. D.C. 178, 194 F.2d 349 (1952).

2. *Id.*, 90 U.S.App. D.C. at 179, 194 F.2d. at 350; *see* Super. Ct. Civ. R. 60(b) ("On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons....").

3. *See Carter v. Cathedral Ave. Co-op., Inc.*, 532 A.2d 681, 684 (D.C.1987) (although "the filing of the notice of appeal indeed does divest the trial court of jurisdiction," that filing "does

The District, in the meantime, may have worried that if it managed to obtain a *Smith* remand of the case from this court, and then the trial judge were to deny the 60(b) motion after further hearing, the District's appeal of the February 4 document-production order might be in jeopardy for lack of clarity as to whether the 60(b)(6) motion would have tolled the period for bringing an appeal of that order.[4] It is important, therefore, to make as clear as possible how the moving party, the trial court, and this court should deal with a 60(b) motion when the appeal of a final order is pending before us.

To set the stage, I note that the District filed three appeals: one from the trial court's February 4, 2009 order to produce documents (No. 09–CV–255) (hereafter "production order"); another from the February 4 order for attorney's fees payable to FOP (No. 09–CV–256); and still another from the June 12, 2009 order denying the District's 60(b) motion (No. 09–CV–737). FOP filed cross-appeals (No. 09–CV–257). The 60(b) motion pertains only to the production order, but the District argues that in the event the production order is *modified after remand*, this court also "should remand for reconsideration of the fee award."

In the direct appeal of the production order, the District argues that (I) the "requested documents are exempt from disclosure under the privacy exemption to FOIA," that (II) "FOIA does not require the extensive and burdensome redaction ordered here," and that (III) "in the alternative, the Court should remand for further proceedings concerning whether the records can be effectively redacted to protect the privacy of officers and witnesses" and, "at minimum," for possible modification of "the order under review to require FOP to pay for an outside contractor" to undertake the redaction.

The 60(b) motion, in paragraphs 2 and 3, essentially tracks, and thus asks the trial court to reconsider, the first two issues on direct appeal, and in paragraph 4 the motion for all practical purposes seeks reconsideration of the third issue, although in slightly more expansive language. *See per curiam* opinion *ante* at 333–34. I think it is fair to conclude, therefore, that the substantive issues on direct appeal and under Rule 60(b) concerning the production order are the same. Accordingly, when addressing 60(b) relief concerning the production order, I am considering together the proper disposition of those two interrelated appeals, Nos. 09–CV–255 and 09–CV–737.

## II.

In an ideal world, the District would have had all the evidence it needed to make its "exemption" and "undue hardship" arguments ready for presentation before the trial court entered its final, appealable order that imposed the "production deadlines." Thus, "[i]n most cases rule 60(b) motions are not opportunities for a losing party to present known facts that it should have presented prior to judgment," and "an agency generally waives any FOIA exemption it fails to raise at the initial proceedings before the [trial] court."[5] But FOIA cases, such as this one, commonly concern requests for production of innumerable files with thousands of pages, requiring careful redaction

---

not divest the trial court of all power to act upon the motion").

**4.** *See* D.C.App. R. 4(a)(4) and (f); Super. Ct. Civ. R. 60(b)(6).

**5.** *Piper v. U.S. Dep't of Justice,* 374 F.Supp.2d 73, 78 (D.D.C.2005) (citations and internal quotation marks omitted).

for protection of privacy interests. And commonly, too, as here, good-faith disputes develop over statutory exemptions from disclosure, as well as over burdens inherent in redacting the requested files to prevent violations of privacy that could harm individuals without advancing the interests of the party seeking FOIA information. I agree with Judge Lamberth:

> [I]n certain FOIA cases where the judgment will impinge on rights of third parties that are expressly protected by FOIA, such as privacy or safety, district courts not only have the discretion, but sometimes the obligation to consider newly presented facts and to grant relief under Rule 60(b).[6]

In this case, the delays in readying documents for production have frustrated FOP while the burdens and costs of production, with careful redactions to protect privacy, have frustrated the District. Whatever fault, if any, may be assignable to the District's performance here—an alleged failing I do not evaluate—I perceive no basis for concluding that the District did not act in good faith in its efforts to comply with the February 4 production order, and there is no evidence that the 60(b) motion was interposed for delay. Under such circumstances, therefore, 60(b) relief is not foreclosed.[7] Questions abound, however:

1. How certain must the trial court be that "it will grant the motion" before a party may expect the appellate court to grant a remand? And how specific must the intended grant of 60(b) relief be to generate a remand?

2. When a final order is pending on appeal, does the trial court have authority to entertain the 60(b) motion and to hold an evidentiary hearing, perhaps inviting further filings, before deciding whether it will grant relief after a remand?

3. If the trial court indicates that it will grant a 60(b) motion, does the moving party alone have the responsibility, and sole prerogative, to ask the appellate court for a remand, or may the trial court also initiate that request?

4. If the 60(b) motion alleges several grounds for modification of the final order on appeal, and the trial court indicates that it will grant the motion as to only one, will remand of the entire case permit the appellant to reopen argument on all the alleged grounds, or must consideration on remand be limited to the ground on which the trial judge has invited return of the case?

5. Assume that there are three issues on appeal, that the 60(b) motion pertains to only one, and that there is no way in which the requested 60(b) relief could affect our disposition of the other two issues. Could this court, while remanding the "case" for 60(b) relief, simultaneously dispose of the other two issues with finality? Alternatively, could this court, consistent with remanding the "case" for 60(b) purposes, keep the case alive on our docket as to the issues not remanded for 60(b) review?

6. If the entire "case" is remanded for 60(b) relief on one issue, is it clear that, after such relief is granted, the case can

---

6. *Id.*

7. *Cf. id.*, 374 F.Supp.2d at 78–79 ("DOJ has apparently acted in good faith, if also with sluggish neglect, and with the interests of third-party individuals at heart. DOJ's mishandling of this FOIA case, though a serious problem, does not show a lack of good faith or preclude the grant of its Rule 60(b) motion.") (citing *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C.Cir.1980) ("Reconsideration under Rule 60(b)(6) is proper even though the original failure to present that information was inexcusable.")).

be returned to the court of appeals for review of the other issues even though the time for filing the underlying appeal has expired?

7. If the trial court certifies that it "will" grant specified 60(b) relief, must this court remand the case, or is remand a matter of appellate court discretion?

### 1. *Certainty and Specificity of Trial Court Relief*

As to the first question, the trial judge announced that she was "inclined to grant relief of some sort" to the District pertaining to the "manner and timing and cost" of producing the documents. But an "inclination" is not enough to elicit a remand. Beginning with *Smith v. Pollin*, the case law has required an unequivocal statement by the trial court that it "will" grant the 60(b) motion if the case is remanded; the report of a mere "inclination" to grant will not be sufficient to trigger a remand. Otherwise, the possibility of a trial court denial of relief after remand would remain; the appeal would be off this court's docket; the time for filing an appeal of the underlying final order more than likely would have expired; and the appellant would have to find a way of reinstating his appeal—all to the detriment of judicial economy. Moreover, the motion and corresponding trial court intention to grant 60(b) relief must be specific. A loose or ambiguous statement of the intended relief would likely lead to uncertainty and prolong the litigation—again, to the detriment of judicial economy.

### 2. *Trial court authority to entertain 60(b) relief while the case is pending appeal*

The requirement of specificity suggests the answer to the second question: could the trial judge have addressed the 60(b) motion, to some extent, without a remand? Realistically, in this case the trial judge could not have considered the motion—based on alleged difficulties in redacting the records the judge had ordered produced—without an evidentiary hearing, for she could not have dealt with a motion alleging undue hardship without addressing proffered evidence not yet before her. Reflecting this reality, the District had produced for the judge's inspection *in camera* a representative sample of the files on which the District depended to make its "undue hardship" argument. The judge declined to take a look. What neither the judge nor the District recognized, however, is this: although the District's appeal of the February 4 production order divested the trial court of jurisdiction to grant *relief* under Rule 60(b), "the filing of the notice of appeal does not divest the trial court of all power to act upon the motion." [8] The trial court, therefore, may consider a 60(b) motion while an "appeal is pending and determine whether it would grant that motion assuming the Court had jurisdiction." [9] Nothing would have forbidden the trial judge to conduct an evidentiary 60(b) hearing, in order to determine whether she "will grant the motion" upon remand by this court.

A Rule 60(b)(6) motion "shall be made within a reasonable time" from the date of

**8.** *Carter, supra* note 3, 532 A.2d at 684.

**9.** *LaRouche v. U.S. Dep't of Treasury,* 112 F.Supp.2d 48, 52 (D.D.C.2000) (citing *Hoai v. Vo,* 935 F.2d 308, 312 (D.C.Cir.1991)) (while appeal is pending, trial court "may consider the 60(b) motion," and, if it "indicates that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted"); *see Smith, supra* note 3 (noting that federal criminal rules had been amended to make clear that trial court could entertain motion for new trial while appeal was pending but could "grant the motion only on remand of the case"; same procedure applies in civil cases).

a final order,[10] and a delayed though timely filing under the rule, coupled with an evidentiary hearing on the motion, may involve the trial court in a 60(b) proceeding during the very period of time that this court is actively considering the underlying appeal. The parties, therefore, are obliged to inform this court of a 60(b) proceeding that is unlikely to be resolved with dispatch, in order to minimize, if not avoid, duplication of judicial efforts concerning the same order on appeal.

### 3. *Responsibility for requesting the remand*

In answer to the third question, *Smith v. Pollin* expressly places responsibility for seeking a remand from this court on the moving party,[11] not on the trial court, provided, of course, that the movant has received a trial court statement that the court "will" grant 60(b) relief upon the requested remand.[12] It is unlikely that a trial court, *sua sponte*, would transmit the ruling to this court directly, without leaving it to the movant to do so, but I state this perhaps obvious point for this reason: after the trial court announces that it "will grant" a 60(b) motion after a remand, the parties may have reason, nonetheless, to defer the remand, based on prospects for settlement unknown to the trial court. The trial court, therefore, issues the ruling that invites remand, but only the movant brings that ruling to this court.

### 4. *Scope of 60(b) ruling permitted after remand*

The fourth question presents a problem that arises when a trial judge says she will grant 60(b) relief for some but not all of the requests presented in the motion.

In the present case, the judge's announced inclination for relief was limited, in the trial judge's words, to the alternative request for relief in paragraph 4 of the motion presenting "the issue of burdensomeness" attributable to the "manner and timing and cost of production" of the requested documents. In contrast, when referring to the District's requested "dismissal" of the case, the judge stated that she would "not be inclined" to amendment or clarification of her order, although she added, without further explanation, that she was "not ruling as to that effect right now." At this point in the proceedings, therefore, we do not know exactly what relief, if any, the trial judge assuredly would grant if she proceeded to hear, again, the 60(b) motion in full.

Assume, however, solely for sake of argument, that the trial judge, after a hearing, would certify her willingness to grant specific 60(b) relief to reduce "burdensomeness," as requested in paragraph 4 of the motion, if this court were to grant a remand for that express purpose. The question then may arise as to whether, after remand of the "case"—meaning the appeals of the production order coupled with the order denying 60(b) relief—the movant would be allowed to ask the trial court to revisit the rejected 60(b) contentions (paragraphs 2 and 3 of the motion) in addition to the one in paragraph 4.

In *Smith v. Pollin*, the D.C. Circuit considered a 60(b) motion that posed a single issue, namely, whether the trial court had jurisdiction to grant a new trial based on newly discovered evidence while the case was pending appeal. The court of

10. Super. Ct. Civ. R. 60(b). Under subsections (1), (2), and (3) of the rule the motion must be filed "not more than 1 year after the judgment, order, or proceeding was entered or taken."

11. *Smith, supra* note 1, 90 U.S.App.D.C. at 179, 194 F.2d at 350 (as stated in the *per curiam* text *ante* at note 5).

12. *Id.*

appeals said no, but opined that a new trial could be granted if the appellant obtained a "remand of the case in order that the District Court may grant the motion." [13] In the usual case like *Smith*, therefore, when a trial court states that it "will grant the motion," it will have developed a record complete enough for such certainty, and the particular relief available to the moving party will conform to the motion without any thought of expanding that relief during the remand proceeding. Otherwise, the requirement of specificity (discussed in answer to the first question) would be compromised. In sum, once a trial court has circumscribed the relief that it "will" grant, based on a complete record, the court will be limited to that relief upon remand. The proper forum for defining the nature and scope of 60(b) relief is the trial court, through evidentiary hearing if appropriate, *before* a remand is sought under *Smith v. Pollin*, not after.

This case is different. Unlike the motion in *Smith*, the District's 60(b) motion presents several issues on a record that is apparently not yet complete enough for the trial judge to decide whether she will or will not grant the motion, even though "inclined" to do so in part. There is at least the possibility, therefore, that if the judge had conducted an evidentiary hearing on the District's motion before denying it, the evidence might have induced her to reconsider her conclusions about the issues raised in paragraphs 2 and 3 of the motion (alleging "exemption" and "undue hardship"), rather than limiting relief to the "alternative" proposed in paragraph 4.

More specifically, the trial court denied the District's two central contentions (based on testimony by three experts at trial). According to paragraph 2 of its 60(b) motion, the District says it is not required to produce the requested records because they are covered by FOIA's privacy exemption. And in any event, says the District in paragraph 3, the records need not be produced because FOIA does not require the "overly burdensome" redaction, amounting to "undue hardship," that would be necessary to protect the privacy of the police officers discussed in those records. Each denial of the District's contentions was premised on the court's findings after trial that the District had failed to conduct a systematic review of the records, and thus had failed in its burden to prove either contention. But the court also appeared to base its denial in each instance, at least to some extent, on its lack of jurisdiction to get into the matters again—an erroneous understanding, as we have seen.

It may well be that, if the court had conducted the requested *in camera* inspection of proffered records, it would have seen nothing to cast doubt on its earlier conclusions after trial that redactions were easy enough to accomplish, and thus that the District's two principal arguments in paragraphs 2 and 3 of it motion lacked merit. On the other hand, as noted earlier, it is conceivable (though perhaps less likely) that the trial court might have discovered evidence of redaction difficulties that led to more and more *in camera* inspections that led, eventually, to erosion of its earlier rulings on exemption and undue hardship. I have no idea what the evidentiary hearing would have shown, but I cannot be certain that the hearing would not have caused the entire fabric of the February 4 production order to unravel. The trial court's rulings in that order were to some extent evidence-based, not premised exclusively on statutory interpretation. Therefore, if we were to affirm now the court's rejection of the alleged exemp-

13. *Id.*

tion and hardship, we could not be certain that a 60(b) hearing on remand, at which documentary evidence is received for the first time, would not conflict with that affirmance and thus undermine it as premature.

This division of the court recognizes that the question is close. The District's proffer of evidence through testimony at trial offered little support for its defenses against production of the requested records. But my colleagues and I cannot be convinced, to the point of affirming the court's "no undue hardship" ruling (paragraph 3), that a full-blown hearing could have made no difference in that disposition. And, although the likelihood is remote that the District's redaction evidence, when fully presented, could support application of the privacy exemption to all requested documents (paragraph 2), the possibility is still there because evidence, not just the FOIA statute, informs the exemption analysis. Accordingly, because we cannot say to a certainty that the trial court's revisiting the District's 60(b) motion would not affect the court's exemption and hardship rulings we must remand the case for reconsideration in full of the orders pertaining to document production (No. 09–CV–255) and denying 60(b) relief from that production (No. 09–CV–737).

This is not to say that, absent a remand to allow further evidence, the record to date would not support affirmance of the production order and the trial court's 60(b) ruling. It is to say, rather, that the record to date is apparently not ripe for our review and thus permits removal of the document-production case from our docket for further proceedings in the trial court.

5. *Disposition or retention of issues on appeal when the case is remanded for 60(b) relief on fewer than all the issues on appeal*

And now the fifth question. If relief granted under a 60(b) motion cannot possibly affect the disposition of the other issues on appeal, can this court, when remanding the "case" for 60(b) relief, simultaneously dispose of the other issues with finality, narrowing the scope of the "case" remanded? Arguably, this question is not directly presented here because we are remanding on all the 60(b) issues, and because the District's appeal and FOP's cross-appeal of the court's attorney's fee award come from an order conceptually separate from the orders requiring production of documents and denying corresponding 60(b) relief. Nonetheless, the question will be germane to many *Smith v. Pollin* remands, and, despite the separate docketing of the attorney's fee award, the question does become relevant to the discussion here.

One can say "yes"—this court can resolve some issues in a final order on appeal with finality, while remanding others—if, but only if, the other issues on appeal are entirely severable from the 60(b) remand, such that 60(b) relief in the trial court in no way could affect the relief granted or denied by this court on the other issues. That conclusion seems correct by analogy to the policy governing finality reflected in the trial court's Rule 54(b), which provides in part:

> When more than 1 claim for relief is presented in an action ... the [trial] Court may direct the entry of a final judgment as to 1 or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order ... which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims ... and the order ... is subject to revision at any time before the entry

of judgment adjudicating all the claims.... [14]

Similarly, this court should not sever and resolve an issue on appeal, not addressed in a 60(b) remand, unless we can say to a certainty—make an express determination—that resolution of the 60(b) motion would not conflict with, and thus would not undermine, our resolution of the other issue, and vice versa. If there is a nexus between the 60(b) and other issues, a remand for 60(b) purposes ordinarily will necessitate a remand of the case for all purposes, and thus a removal of all issues from our docket. It is not our practice to remand and retain separate parts of a case.

Assume, for example, that the attorney's fee award against the District had been contained in the production order on appeal. Because the fee award cannot be finalized until the trial court finalizes the 60(b) motion after remand, we cannot say that a present ruling on the fee award would not conflict with the ultimate disposition under Rule 60(b). Accordingly, we could not resolve the attorney's fee issue on the merits while remanding the 60(b) motion, and thus in remanding the "case" for 60(b) purposes, we would have to remand the attorney's fee issue as well.

In the orders before us, however, the attorney's fee appeals are docketed separately from the 60(b) appeals, and thus theoretically we could hold them in abeyance pending resolution of the 60(b) issues, on the ground that they are not technically part of the same "case." Nonetheless, in the likely event that the remand proceeding will affect the attorney's fee order—and thus a second *Smith v. Pollin* remand will be called for to consider attorney's fees once the 60(b) ruling is issued—judicial economy dictates that we remand the attorney's fee appeals (Nos. 09–CV–256 and 09–CV–257) along with those premised on Rule 60(b), just as we would if the 60(b) and attorney's fee issues were joined in the same order.

Implicit in this discussion is the need for resolution of what we mean by a "case" for purposes of defining the scope of a *Smith v. Pollin* remand. Normally, that will mean all the issues presented under a particular docket number representing the appeal. Here, however, we have four docketed appeals, of which two directly concern Rule 60(b) issues while the other two address attorney's fees. For purposes of analysis, I have, to this point, separated these dockets into two "cases" characterized by the two, theoretically separable issues each represents. Nonetheless, because of the unquestioned relationship between the document-production order and the attorney's fees incurred with reference to that order, we could reasonably characterize all four appeals as one "case," given that a remand of all four is justified—indeed in my opinion required—by their interrelationship. My central point is this: once it is clear that a remand is necessary for reconsideration of the trial court's 60(b) ruling, everything on our docket in the four *DC v. FOP* appeals has to go back to that court, whether characterized as a remand of two cases or of one larger case. Ultimately, the case definition is important only as an organizing principle for how many issues must be considered together if one issue is enough to trigger a *Smith v. Pollin* remand.

In a multiple issue case there is a final, theoretical possibility. Suppose that this court would grant a request for a remand for 60(b) relief on one issue. Suppose further that on the record presented—and unlike the appeals before us here—this

---

14. Super. Ct. Civ. R. 54(b).

court could rule definitively on the remaining issues on appeal, *i.e.*, could rule on them without impact on, or being impacted by, the 60(b) outcome. Question: in remanding for the 60(b) relief, would this court be obliged, as part of the remand order, to dispose of the remaining issues on appeal? Or, instead, could we retain those issues on our docket pending decision of the 60(b) issue? It is not evident why this court might want to hold onto those resolvable issues, unless perhaps—in a highly unusual case—this court had decided those issues but not finalized the opinion and wanted to get the trial court started on the remand before this court was ready to rule on the other issues.

That said, we always have two options. We either can remand the case in full—our typical practice—or, on very rare occasions, we can retain the case in full, holding in in abeyance while remanding the record for enhanced proceedings and additional rulings. Thus, in the event that this court wished for some (highly unlikely) reason to withhold ruling on issues that it could dispose of without relation to the 60(b) remand, we would remand the record for the 60(b) proceeding and rule on the withheld issues as soon as practicable. Then, at the time of our dispositive ruling on the remaining issues, we would convert the remand to a remand of the case (no longer the mere record), unless in the meantime the trial court had already issued its 60(b) decision, and the losing party had kept the case alive by filing an appeal of that ruling.

6. *Appealability of issues not affected by 60(b) ruling after remand of the entire case*

The sixth question pertains to the usual situation when there are several issues on appeal and this court remands the entire case for a 60(b) ruling as to one of them. Once the 60(b) proceeding is resolved, what about appealability of the other issues in the final order? If the time for refiling the balance of the appeal were pinned to the date of the trial court's original order on appeal, the time for refiling more than likely would have long expired. That date, however, will no longer be relevant if relief is granted under 60(b). The trial court will modify the original order, and thus replace it with a new order that reflects the appellant's remaining obligations (if any) after 60(b) relief. The appellant, then, will have thirty days from the date of that new order within which to file a new appeal [15] on any remaining issue should he or she wish to do so. Similarly, if the court denies the 60(b) motion in full—even with an unexpected denial, after reconsideration, following a *Smith v. Pollin* remand in anticipation of promised relief—the denial order, like the one granting 60(b) relief, should reiterate any remaining obligations the appellant may have under the original judgment, in order to trigger a new period for filing an appeal of the judgment, as well as appeal of the 60(b) denial itself.

7. *Whether the court has discretion to deny a remand when the trial court certifies that it will grant 60(b) relief*

Finally, the last question asks whether this court is obligated in every instance to honor a request for remand certifying that the trial court "will" grant specified 60(b) relief. The answer is "no." Although a remand will be routine in virtually all such instances, I can think of at least one situation when this court would have good reason to deny the request. We may find that reason in the appellant's own interest. If we were close to a disposition on appeal wholly in the appellant's favor, we likely

15. D.C.App. R. 4(a).

would deny the remand and choose instead to dispose of the entire appeal, rather than remand for the award of partial relief.

\* \* \* \* \* \*

As stated in our opinion *per curiam* and explained more fully above with reference to the fifth question, we remand this case, meaning all four appeals, and thus strike them from our docket, in order for the trial court to consider anew the District's 60(b) motion and the related attorney's fee award. We thus allow for the possibility that the trial court's review may, but not necessarily will, lead to reconsideration of issues in the motion that precede the issue in paragraph 4 and, in any event, may result in revision of the attorney's fee payable to FOP.